FRANCIS BETHEL v. ALEXANDER R. LINN AND WILLIAM F. LINN.

*Garnishment—Fraudulent transfer—Burden of proof—Liability of garnishee—Special findings of jury—Willful admixture of goods—Damages.*

1. Where the purchasers of a stock of goods were proceeded against as garnishees on the ground that the sale was fraudulent as to the vendor's creditors, and on the trial of the statutory issue the court directed a verdict for the vendees on the ground that the plaintiff had failed to show that the goods were in the vendees' *possession* at time of making the garnishee affidavit,—

   *Held,* that the *burden* of proof was upon the plaintiff to establish the *fraudulent* character of the sale, and that, until such fact appeared, the question of *possession* was irrelevant ; but *this* issue having been taken from the jury, the sale will be considered as fraudulent for the purposes of a review in the appellate court.

2. How. Stat. § 8059, making a garnishee defendant liable for all property held by him by a conveyance, transfer, or title void as to the creditors of the principal defendant, is confined in its operation to property in the *possession* of the garnishee defendant at the time of the *service* of the writ of garnishment, and is not contrived to reach cases where property has been put into the hands of persons to screen it from creditors, and who are not garnished until *after* they have put it away, even though that

has been done in furtherance of the original design. *Fearcy v. Cummings*, 41 Mich. 384.[1]

3. On the trial of the issue provided for by the garnishee statutes of this State, the jury must find the *value* of the property proven to have been in the *possession* of the garnishee defendant at *time* of the *service* of the writ upon him; and to that end it would seem to be the concern of the plaintiff to request the jury to find *specially what* property was *so* held by him, and its *value*, and, in case it consists of articles too numerous for the jury to carry in their memory unaided by written *memoranda*, there can be no objection to their taking to their room a list of such articles.

4. The rule that "a man who *willfully* places the property of another in a situation where it cannot be recovered, or its true amount or value ascertained, by mixing it with his own, or in any other manner, will be compelled to bear the inconvenience of the uncertainty or confusion he has produced, even to the extent of surrendering the whole, if his share cannot be distinguished, or responding in damages for the highest value at which the property in question can reasonably be estimated," will not justify a judgment without evidence, and its legitimate effect is to render evidence admissible which, under ordinary circumstances, could not be received, and every reasonable inference will be deduced therefrom in favor of the innocent party, and against the wrong-doer, and the burden of proof will be shifted to the spoliator.

5. Where the purchasers of a stock of goods were proceeded against as garnishees of their vendor under the claim that the sale was fraudulent as to creditors, and on the trial of the statutory issue it appeared that, while the goods were put in among a similar stock of the vendees, and no effort made to keep them separate, they were capable of *identification*, and on their examination the vendees showed no disposition to conceal anything,—

*Held*, that it was not such an intermixture as placed the vendees in the attitude of wrong-doers, there being no confusion of goods, and that the maxim that "all things are presumed against a wrong-doer," and the principles applicable thereto, did not apply (see head-note 4).

·*Held*, further, that as it appeared from *such examination* that *some* of said goods were in the garnishees' possession at the time of the service of the writ, the plaintiff was entitled to at least *nominal* damages in an action of trover, and that it was error to

---

[1] The right to hold a garnishee depends on the state of the claim as one garnishable or not at the *time* of the *service* of the process. *Martz v. Detroit F. & M. Ins. Co.*, 28 Mich. 204.

take the case from the jury on the ground that the proof failed to show the garnishees' possession at such time of any of said goods (see head-note 1).

Error to superior court of Detroit. (Chipman, J.) Argued October 14, 1886. Decided November 4, 1886.

Action against garnishees for goods alleged to have been purchased in fraud of creditors. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*George S. Hosmer,* for appellant:

Counsel contended that, having traced the goods into the possession of the garnishee defendants, and they failing to show that they had disposed of the same, the presumption of continued possession arises, and cited the authorities found in the opinion.

*John Atkinson,* for defendants:

Defendants can only be made liable for the goods in their hands at the time the affidavit of garnishment is made: How. Stat. § 8064; *Fearey v. Cummings,* 41 Mich. 384; *Folkerts v. Standish,* 55 Id. 467.

CHAMPLIN, J. The proceedings in the principal cause, to which this is ancillary, are, briefly, as follows:

July 28, 1884, Francis Bethel commenced a suit in assumpsit in the superior court of Detroit by summons against Louis N. Moran and Amadeus T. Moran.

The declaration was in assumpsit, with counts for goods sold, by the following firms and persons, to the principal defendants, as Moran Brothers, the several claims for which were duly assigned to plaintiff: D. D. Mallory & Co.; Packard & James; Douglas & Stewart; Electric Soap Manufacturing Company; D. Buchner & Co.; and the common counts in *indebitatus assumpsit,* under which the plaintiff gave notice he would offer in evidence fourteen certain promissory notes.

Louis N. Moran filed a plea of the general issue, and Amadeus T. Moran a plea of the general issue, with notice of infancy.

The case was brought to trial, and verdict rendered as follows:

"That the said Amadeus T. Moran, by reason of his infancy, did not undertake and promise in manner and form as the said plaintiff hath in his declaration in this cause complained against him; and the jurors aforesaid, on their said oaths aforesaid, further say that the said defendant Louis N. Moran did undertake and promise in manner and form as the said plaintiff hath in this cause complained against him; and they assess the damages of the said plaintiff, by reason of the non-performing of the promises and undertakings mentioned, over and above his costs and charges, at the sum of $9,273.86.

"The attorney for the said plaintiff, having submitted in writing two special questions to be answered by the jury, the jury return answers to such questions, which questions and answers are as follows:

"'Q. Do you find defendants were partners as Moran Brothers?' To which question the jury answer, 'Yes.'

"'Q. Was A. T. Moran an infant at the time of the undertakings and promises set forth in plaintiff's declaration?' To which question the jury answer, 'Yes.'"

Judgment was duly entered on this verdict prior to the trial of the garnishment issue.

On the thirty-first day of July, 1884, plaintiff filed in the court and cause an affidavit as the basis of a writ of garnishment against Alexander R. and William F. Linn, composing the firm of A. R. & W. F. Linn, alleging that he had good reason to believe, and did believe, that Alexander R. and William F. Linn, partners under the firm name of A. R. & W. F. Linn, had property, money, goods, chattels, credits, or effects in their hands, or under their custody or control, belonging to the principal defendants, and that said Alexander R. and William F. Linn were indebted to said defendants, and containing the other averments required by the statute.

A writ of garnishment was issued, returnable August 16, 1884, which was duly served upon defendants in the writ. The garnishees answered, denying the allegations of the affidavit as to their custody or control of property, or indebtedness. Thereupon Bethel, by his attorneys, demanded an oral axamination before a circuit court commissioner, which was had, and the disclosure filed in court. Plaintiff then filed a demand for a trial of the statutory issue, pursuant to section 8068 of Howell's Statutes.

This issue came on to be tried at the September term of the court, 1885, and, after the introduction of the testimony, the counsel for the defendants moved to strike out the evidence, and direct a verdict for the defendants. The judge of the superior court thereupon directed a verdict for the defendants upon the ground that the plaintiff had *failed* to show that the *goods* were in the garnishees' *possession* at the *time* of *making* the affidavit. This raises the *only* question for our decision.

The plaintiff introduced in evidence the disclosure of the defendants, and other testimony, from which it appeared that the firm of Moran Brothers were doing business in the city of Detroit, selling teas, coffees, spices, soap, etc., at wholesale; that on the twelfth day of March, 1884, said Moran Brothers sold to these defendants all the stock—goods of every kind and nature—then in the store of Moran Brothers, together with the machinery and fixtures in said store; also one horse and truck; also all accounts and demands due or to become due the firm in connection with said business,— for the consideration of $10,000, for which defendants gave their negotiable promissory notes payable in three, six, nine, twelve, and fifteen months, and a due-bill to L. V. Cady for $500; that these goods were all delivered into the possession of said A. R. & W. F. Linn, who were engaged in the same line of business, about three blocks from the store occupied by the Moran Brothers.

The plaintiff's claim is that this transfer of the stock of goods from Moran Brothers to A. R. & W. F. Linn is void as to the creditors of the firm of Moran Brothers, because he asserts that it was made for the purpose of hindering, delaying, and defrauding the creditors of Moran Brothers, and that the defendants are liable in this action under that clause of the statute relative to garnishees which provides that from the time of the service of the writ the garnishee shall be deemed liable to the plaintiff to the amount of property, personal and real, money, goods, chattels, and evidences of debt or effects of the principal defendant which such garnishee holds by a conveyance, transfer, or title that is void as to the creditors of the principal defendant.

In order to establish his claim, it was incumbent upon the plaintiff to establish, by proof satisfactory to the jury, that the transfer from Moran Brothers to the garnishee defendants was fraudulent as to the creditors of Moran Brothers; for, unless he could establish this fact, the defendants would not, in any event, be liable as garnishees, and the question as to whether or not they had any property in their hands at the time the writ was served which had been transferred to them by Moran Brothers would have been irrelevant, and not open to inquiry.

Although there was testimony tending to show that the sale was fraudulent, from which, if believed, the jury might have found that the sale was so as to the creditors of Moran Brothers, yet this branch of the case was not submitted to the jury, and in considering the question upon which the court below took the case from them we must treat it as if the fraudulent character of the sale had been made out.

Before proceeding to a discussion of the points raised by the instruction of the court, it may be well to notice some objections raised upon the argument in behalf of the defendants with reference to the difficulties in the way of enforcing the rights of parties under the garnishee law. A

brief reference to the provisions of the statute will be necessary in order to show the points raised.

The statute (How. Stat. § 8068) provides that upon the trial of a statutory issue the affidavit for the writ of garnishment shall be held and considered as a declaration by the plaintiff in trover against the garnishee as defendant, where the garnishee is chargeable for property; and upon filing of the garnishee disclosure, or, in cases where an examination is had, upon filing of the report or statement made by the garnishee, the matter of such affidavit shall be considered as denied, except so far as admitted by such disclosure, answers to interrogatories, or report, which admissions shall have the effect of admissions in a plea, and shall be *prima facie* evidence of the matters therein admitted.

The statute (section 8072) also provides that if, by the verdict, the garnishee be found liable as such for an amount equal to or greater than the judgment and costs against the principal defendant, judgment shall pass only for the latter amount. In other cases it shall pass for the amount of the liability ascertained by the verdict.

If any person garnished shall have in his possession any of the property aforesaid of the principal defendant, which he holds by a conveyance or title that is void as to the creditors of the defendant, he may be adjudged liable as garnishee on account of such property, although the principal defendant could not have maintained an action therefor against him (section 8091).

When the garnishee shall be chargeable by reason of any goods or chattels, other than money, which he holds, or is bound to deliver to the principal defendant, not subject to any lien, judgment shall be rendered and execution issued against the garnishee for so much thereof as may be necessary to satisfy the same; and he shall make delivery to the officer, who shall sell and apply and account for the proceeds as usual in ordinary executions (section 8076).

If any person adjudged liable, as garnishee, for any goods, chattels, or other property whatever, shall refuse to expose the same, so that the plaintiff may levy his execution thereon, the court shall, on return thereof made by the officer, grant a rule upon such garnishee to show cause why execution should not issue against such garnishee, his own goods and estate; and upon due service of such rule, and no sufficient cause shown to the contrary, execution shall be issued against him for such sum as the court may adjudge (section 8080).

It is urged, and it is doubtless true, that from these provisions of the statute the jury must find the *value* of the property proven to have been in the possession of the garnishee defendant at the *time* of the service of the writ upon him, and thereupon the court is required to render judgment in accordance with section 8072.

But it is said that the action is trover, and the affidavit, which stands as the declaration, contains no description of the property; and where the disclosure denies the allegations of the affidavit, and the report does not admit any description of property as being in the possession of the garnishee, there is nothing upon the record to identify the property. The evidence given upon the trial forms no part of the record unless preserved and embodied in a bill of exceptions, and this cannot be done until after judgment.

The law regards the garnishee in the light of a stakeholder of the property in his hands, and as being indifferent to which of the parties in the principal suit it shall be delivered; and, when he is adjudged liable as garnishee, it permits him to turn out such property to the officer holding the execution against him, and when he does so he is discharged from all further liability to the plaintiff and to the defendant in the principal suit.

But it is asked, how shall the officer know whether or not the garnishee has exposed the property in his hands to the

officer on which to levy? Neither the record in the cause, nor his execution, affords him any information upon the subject. And how is he to make return that the garnishee has refused to expose the same?

It is suggested that it might be a possible case that the garnishee might expose an insignificant part, and assert that it is the whole. Must the officer acquiesce? or, if not, what evidence has he that the assertion is false? And how is the court to determine whether execution should issue against the goods and chattels of the garnishee, and for what amount? Where the record contains no description of the property by which it is capable of identification, he must necessarily be in the dark as to what goods have not been exposed by the garnishee; and it is strenuously urged that these suggestions, and others that might be offered, show how inadequate the provisions of the statute are to enforce remedies and protect the rights of parties in proceedings under it, and that they are so crude and uncertain as to be incapable of enforcement.

It is the duty of the Court, however, to sustain the law and to preserve the remedy designed by the Legislature, if there appears to be any way in which the statute can be carried out and made effectual. I think the difficulties suggested can be easily avoided by the use of the ordinary method in trials of actions at law in requiring a special verdict to be returned by the jury embodying the property in the garnishee's hands for which they adjudge him liable.

Under the statute as it stands, it would seem to be the concern of the plaintiff to submit at least two questions to the jury:

1. What property do you find to have been in the possession or under the control of the defendant at the time of the service of the writ of garnishment upon him, for which, under the evidence and the law as given you by the court, he is liable as garnishee?

2. What do you find the value of such property to be under the testimony, and the law as given you by the court?

The answers to these questions obviate all the difficulties above suggested in the way of enforcing the law and protecting the rights of the parties. There may arise cases, like the one under consideration, where the articles would be too numerous for the jury to carry in their memory unaided by written *memoranda*. In such case there can be no objection to the jury being permitted to take to their room a list of such articles as are shown to have been in the possession or control of the garnishee at the time of the service of the writ.

Returning now to the consideration of the questions raised in the bill of exceptions relative to the alleged erroneous charge of the court. The plaintiff's counsel insists that, the defendants having admitted their possession of the stock of goods in March, the law presumes that such possession continued, until it was shown that they had parted with such possession; and, in support of this proposition, he cites the following authorities: 1 Greenl. Ev. § 41; Best, Ev. (Chamberlayne's ed.) 389, § 405; Wood, Ev. 180, § 62; *Harriman v. Queen Ins. Co.*, 49 Wis. 71; *Magee v. Scott*, 9 Cush. 148; *Hanson v. Chiatovich*, 13 Nev. 395; Lawson, Ev. rule 29, p. 163; Steph. Dig. Ev. arts. 95, 96.

Mr. Greenleaf expresses the general rule as follows:

"Other presumptions are founded on the experienced *continuance* or permanency, of longer or shorter duration, in human affairs. When, therefore, the existence of a person, a personal relation, or a state of things is once established by proof, the law presumes that the person, relation, or state of things continues to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question."

In some of the cases cited and referred to by the text writers, it is said that real property once shown to be in the possession of a party, such possession is presumed to continue until the contrary is shown.

Again, possession of personal property raises a presumption that the party in possession is the *owner of the title* to such

property, and is sufficient to maintain the action of trover for its conversion by a party wrongfully depriving the possessor of such property. It is upon this presumption of title arising from possession that the finder of lost goods may maintain the action of trover against any person wrongfully detaining them from his possession. Such has been the rule of law from the time the case of *Armory v. Delamirie,* 1 Strange, 505, enunciated the principle, to the present.

I can see how the possession of personal property, once proved to exist, will be presumed to continue until the contrary is shown, when applied to the possession of property where the chief object and purpose of a party so possessed consists in its retention for use or enjoyment; for this presumption is founded upon experienced continuance. But where a firm is engaged in merchandising, and in continued buying and selling of commodities in their line of business, I do not see how the presumption arises that goods purchased and shown to be in the possession of such firm are presumed to continue in their possession for four and a half months thereafter. If experience is the foundation of the presumption, it appears to me that it would be as strong or stronger that many, if not all, the goods were sold, than that they remained on hand.

Whether a presumption arises must of necessity depend upon the nature of the subject in question, as well as upon the circumstances of the transaction to which it is sought to be applied. It is therefore proper, in this case, to examine the exact nature of the issue involved, and the point to which the proof should be directed.

It was held in *Fearey v. Cummings,* 41 Mich. 384, that the statute was confined to such property as the garnishees have in possession at the time of making the affidavit and at the time of their becoming bound by the proceedings; that it is not contrived to reach cases where property has been put into the hands of persons to screen it from creditors, and

where such persons are not garnished until after they have put it away, even though that has been done in furtherance of the original design. It is plain, therefore, that the plaintiff's testimony should have been directed to the precise point of time when the liability of the garnishees attached, if ever. He should have inquired, and produced testimony to show, what goods of the stock purchased of Moran Brothers were on hand at the time the writ of garnishment was served.

Had it appeared that he was unable to make such proof through the wrongful act of the defendants, either by their destroying or concealing the evidence, or rendering such proof impossible, as by a commingling of the goods with their own, so that it was impossible to distinguish them, or arrive at their quantity or value, then the plaintiff would have been in the position to appeal to that maxim, which is said to be a favorite one of the law, *omnia præsumuntur contra spoliatorem.*[1] The maxim is applied when the nature of the wrongful act is such that not only an injury is inflicted, but the means of proving it is taken away or destroyed, and the extent of the loss rendered incapable of proof. In such case the law will supply the deficiency of proof thus caused by the misconduct of the party by making every reasonable intendment against him, and will give weight and force to every presumption which the nature and extent of the wrong will justify and the circumstances will permit. Thus it is laid down in Smith's Leading Cases that—

"A man who willfully places the property of another in a situation where it cannot be recovered, or its true amount or value ascertained, by mixing it with his own, or in any other manner, will consequently be compelled to bear the inconvenience of the uncertainty or confusion which he has produced, even to the extent of surrendering the whole, if his share cannot be distinguished, or responding in damages for the highest value at which the property in question can reasonably be estimated." 1 Smith, Lead. Cas. 589.

---

[1] "All things are presumed against a wrong-doer."

The authorities cited support the text.    *Lupton v. White,*
15 Ves. 432; *Hart v. Ten Eyck,* 2 Johns. Ch. 62, 108; *Ryder
v. Hathaway,* 21 Pick. 298; *Clark v. Miller,* 4 Wend. 628;
*Bailey v. Shaw,* 4 Fost. 297.

The principle was applied in *Preston v. Leighton,* 6 Md.
88, where the goods in a store were carried off and sold by a
purchaser with full knowledge that a part of them had
previously been mortgaged.    The burden of showing what
proportion of the whole quantity taken was covered by the
mortgage was cast upon him, and he was compelled to bear
the loss which arose from the difficulty of ascertaining the
quantity and price with exactness.

But the rule will not justify a judgment without evidence,
and the legitimate effect of the rule is to render evidence
admissible which, under ordinary circumstances, could not be
received, and every reasonable inference will be deduced
therefrom in favor of the innocent party, and against the
wrong-doer, and the burden of proof will be shifted to the
spoliator.    Whether the court would be justified in extend-
ing the presumption that, the possession of the goods having
been admitted in the defendants in March, it will be pre-
sumed that such possession continued as to all the goods at
the time the writ was served, to this case, must depend upon
the circumstances as developed in the record.    No inquiry or
effort was made by plaintiff to show what, if any, goods
remained in the possession of defendants at the time the
writ was served.    It remains to be seen whether inquiry was
excused by the wrongful act of defendants.

The examination which was had of the garnishees was read
in evidence, and has the force of an admission in a plea.
The only part of it bearing on the question is the following:

"*Q.* Did you keep the stock separate from your own stock?
"*A.* No, sir; we did not.
"*Q.* What did you do with it when you brought it over?
"*A.* Put it in right with the other stock.
"*Q.* Creditors came in frequently, didn't they?

"*A.* Very few came in. I suppose they all thought it was all right. We had very little question about it.

"*Q.* Did you show the goods to any of them?

"*A.* No one asked to see the goods. Any one that wanted to see any particular goods— If you had come over, and wanted to see any of them, if we had understood you were retained, we would have shown you willingly.

"*Q.* The goods were stored with the other stock?

"*A.* Yes, sir. .

"*Q.* No effort made to keep them separate?

"*A.* Roney, Austin & Moran's name was on them, R., A. & M. They stood right from the front of our store back 120 feet, scattered through our stock, with their initials on the goods; and there are some there to-day, standing right there.

"*Q.* Those are teas?

"*A.* No; saleratus and some soap.

"*Q.* That was put in with your old saleratus and soap?

"*A.* They were piled up separately, and some of them had the name of Roney, Austin & Moran.

"*Q.* The full name?

"*A.* Yes, sir; on a label manufactured for them. Some there still, if you want to see it."

It thus appears that the goods, although put in among the stock of defendants, and no effort made to keep them separate, were capable of identification. It was not such an intermixture as placed the defendants in the attitude of wrong-doers, because there was no confusion of goods, and, had inquiry been made of the defendants, the probability is the exact quantity and kind of goods on hand at the time the writ was served would have been testified to. The defendants showed no disposition to conceal anything upon their examination; and no reason is shown to exist why the burden of proof was not upon the plaintiff to establish this part of his case by proof which, for anything that appears, was accessible to him. The maxim above cited, and the principles applicable thereto, do not apply to this case.

It does appear, however, that there were some of the goods in the possession of the garnishees at the time of the service of the writ, from the testimony above quoted. This would, in an action of trover, entitle the plaintiff at least to nominal

·damages; and it was improper to take the case from the jury ·on the ground that there was no proof that any of the goods were in the possession of the garnishees when the writ was ·served upon them.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.