MINERAL RESOURCES, INC. v.
MAHNOMEN CONSTRUCTION COMPANY
AND OTHERS.
A. O. BORSTAD, THIRD-PARTY DEFENDANT.

184 N. W. (2d) 780.

March 5, 1971—Nos. 42190, 42214.

*Wambach & Beuning* and *O. C. Adamson II,* for appellants Mahnomen and Western Surety.

*Raymond A. Lamb,* County Attorney, for appellant county.

*Dosland, Dosland & Nordhougen* and *J. P. Dosland,* for respondent Mineral Resources, Inc.

*Saetre, McLarnan & Stefanson* and *R. B. McLarnan,* for respondent Borstad.

Heard before Knutson, C. J., and Murphy, Rogosheske, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

Defendants Mahnomen Construction Company, Western Surety Company, and Clay County appeal from a judgment of the district court holding them liable to plaintiff, Mineral Resources, Inc., for damages sustained by its assignors because of an alleged wilful conversion of gravel.

On March 23, 1964, defendant Mahnomen entered into a contract with defendant Clay County and the State of Minnesota to furnish materials and to perform work on County State Aid Highway No. 26 in Clay County. Mahnomen thereafter, in June, negotiated a lease with defendant A. O. Borstad which permitted Mahnomen to remove sand and gravel from Borstad's 40-acre tract of land for use on the highway project.

From early July until September 1964, employees of Mahnomen removed gravel, not from Borstad's tract, but from an adjacent tract owned by C. B. Romkey Company subject to a lease granting Ames Sand and Gravel Company the right to remove gravel.

Plaintiff, as assignee of the rights of Romkey and Ames, sued Mahnomen for wilfully converting gravel belonging to Ames. Mahnomen denied that the conversion was wilful and alleged that whatever damages plaintiff suffered were caused by wilful misrepresentations of defendant Borstad as to the location of the boundary line of his land.

Plaintiff joined Clay County and Western Surety Company as additional defendants, alleging that Clay County, as a purchaser from Mahnomen, was liable in the same amount as Mahnomen, even if the county was a bona fide purchaser, and that Western Surety was liable as surety on a statutory bond given by Mahnomen to Clay County. Mahnomen and Western Surety filed a third-party complaint against Borstad.

The matter has been tried twice in the district court. In the first trial the jury found by special verdict that defendant Mahnomen was not a wilful converter. The trial court set aside the verdict and ordered a new trial on all issues, in part because

the judge felt that the jury erred in finding that Mahnomen was not a wilful converter. In the second trial the jury, among other findings, found that Mahnomen was a wilful converter and that Clay County did not know that the gravel used in the highway project did not belong to Mahnomen. The trial court had dismissed the claims against Borstad for lack of evidence that Mahnomen was misled by him.

The jury found that the value of the converted gravel, in place, was $11,564; and the court found that the enhanced value of the material after its removal, processing, and delivery was $85,867.30, the price paid by Clay County. The trial court concluded that Mahnomen, as a wilful converter, was liable to plaintiff for the enhanced value. Clay County was likewise held liable for the enhanced value notwithstanding a finding that it was an innocent converter. Western Surety was held liable in the same amount on the Mahnomen bond to Clay County. Judgment was accordingly entered against defendants for $85,867.30, plus substantial interest.

■ Defendants Mahnomen and Western Surety contend that the trial court erred in dismissing the third-party action against Borstad. The substance of their claim is that Mahnomen's employees summoned Borstad to come to the area of the leased property to tell them where the boundary line was; that Borstad came to the scene and wilfully misrepresented the boundary line, knowing that Mahnomen would rely on such misrepresentations; and that Mahnomen did rely on the misrepresentations.

According to Mahnomen's foreman, George Yost, Borstad came to the area of the leased property and said that he thought the east boundary line of the tract was on the east side of a pit to which he pointed and, further, that he, Borstad, thought that the various test holes to the south of this pit were on his land. But Yost admitted that Borstad qualified these statements by saying that he was not sure where the boundary line was. When Borstad left the scene, he took with him the map he had exhibited

to Yost, stating that he had brought the wrong map and that he would get a correct one.

We agree with the trial court that Yost's testimony was insufficient to support a finding that Borstad wilfully misrepresented the boundary to Yost with the intention that Yost would rely on his misrepresentation.[1] Yost's testimony shows that Borstad was uncertain as to the location of the boundary line and that Yost was aware of this uncertainty. The judgment of dismissal is therefore affirmed.

■ Mahnomen and Western Surety contend that the trial court committed prejudicial error when, in its initial instructions, it told the jury that there was a presumption that Mahnomen's admitted trespass was wilful and that, because of this, the burden of proving that the trespass was unintentional was on Mahnomen. Later, however, in response to questions from the jury as to what constitutes wilful trespass, no mention was made of such presumption or burden of proof.

Mahnomen did not at the time object to that part of the in-

---

[1] Apart from the stated testimony of Yost, which for purposes of this issue we must assume that the jury would credit, there is other undisputed testimony that would have tended to discredit his claimed reliance. It is undisputed that Yost was raised on a farm and had been employed in the road construction business for approximately 10 years. He was, as he admitted, familiar with the dimensions of sections and quarter-sections of land and knew that gravel should not be recovered from land within 1/2 mile from the township road on the easterly boundary of the section. He was able, from his knowledge of the legal description of the land, to find the correct quarter-corner when equipment was moved onto the land. On one occasion he was a passenger in the automobile of the county's project engineer when by use of the vehicle's odometer it was observed that the site of the excavation measured 4/10 of a mile from the township road running along the east boundary of the section. Mahnomen's president had once offered to purchase gravel from Ames' leasehold adjacent to Borstad's tract, so it was known to Mahnomen that there was gravel in both locations. It is uncontroverted, from photographs subsequently taken, that at no time was any gravel taken from the Borstad land.

structions dealing with the presumption of wilfulness. Mahnomen did assign this part of the instructions as error in its motion for amendment of the answers to the special verdict or for a new trial, which was denied.

TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468, 37 Minn. L. Rev. 629, is the leading case dealing with an instruction concerning a presumption. The presumption in that case was the presumption that a decedent exercised due care for his own safety. We held that the presumption carried no weight as evidence and that it was prejudicial error to instruct the jury as to the presumption since the burden of proving contributory negligence rested with the defendant, the party against whom the presumption of due care also operated. We stated (236 Minn. 491, 53 N. W. [2d] 473):

"Where, as here, the burden of proving a fact already rests on the party against whom the presumption operates, instructing the jury that there is such a presumption of due care could be justified only on the theory that the presumption is evidence, a view * * * which we have rejected * * *. * * *

* * * * *

"Under these circumstances, the only effect of giving the presumption to the jury is to lead it to believe that even though it is convinced that defendant has sustained the burden of proving by a fair preponderance of the evidence that decedent was guilty of contributory negligence it may still decide the issue against defendant on account of the presumption of due care. * * * The presumption cannot and should not be permitted to cast any greater burden upon defendant than he already has under such instructions."

We do not think the instruction in TePoel differs significantly from that in the instant case, where the burden of proof (that the trespass was unintentional) rested on the party against whom the presumption (of wilfulness) operated.

Notwithstanding the trial court's erroneous instruction, we

nevertheless hold for several reasons that a third trial upon the issue of Mahnomen's wilful conversion is not warranted. First, the nature of the evidence to which the instruction applied makes it doubtful that the instruction prejudiced the result. The evidence of Mahnomen's trespass was strong, and any evidence tending to rebut the wilfulness of the trespass was weak. The trial court, in the first trial, disapproved a jury finding that Mahnomen was not a wilful converter and, in the second trial, dismissed Mahnomen's claim that it was misled by the conduct of third-party defendant Borstad. The evidentiary setting in this respect is different from that in TePoel. Second, the likelihood of confusing the jury was diminished by the supplemental instructions which notably made no reference to the presumption. Third, unlike the situation in TePoel, Mahnomen failed to take exception to the instructions when given. Although we have no intention of diluting the firm direction of TePoel on this fundamental principle, we are not inclined to give shelter under Rules of Civil Procedure, Rule 51,[2] where counsel by failure to object have tacitly agreed to the instructions of the court. Knutson v. Arrigoni Brothers Co. 275 Minn. 408, 415, 147 N. W. (2d) 561, 566; Hemming v. Ald, Inc. 279 Minn. 38, 46, 155 N. W. (2d) 384, 390. Although we do not think counsel deliberately failed to make timely objection, we do believe that, where the same issue has been twice presented to a jury, counsel should have been prepared to aid the court with more proper instructions concerning the presumptionless burden of proof.

■ Mahnomen and Western Surety contend that we should

---

[2] Rule 51, Rules of Civil Procedure, states in part: "* * * No party may assign as error unintentional misstatements and verbal errors, or omissions in the charge, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. An error in the instructions with respect to fundamental law or controlling principle may be assigned in a motion for a new trial though it was not otherwise called to the attention of the court."

change our longstanding rule as to the measure of damages for wrongful removal of gravel and similar resources of the land. That rule, as set down in Nesbitt v. St. Paul Lbr. Co. 21 Minn. 491, and Hoxsie v. Empire Lbr. Co. 41 Minn. 548, 43 N. W. 476, may be stated as follows: First, if defendant is a wilful converter, the measure of damages is the full value of the converted property at the time and place plaintiff makes demand; second, if defendant is an innocent or unintentional converter, the measure of damages is the value of the property at the time it was taken; third, if defendant is an innocent purchaser from a wilful converter, the measure of damages is the value of the property at the time of such purchase. This rule is the same as that generally applied in cases of conversion of personal property.[3]

The salutary purpose of holding a bad-faith or wilful converter liable for the enhanced value of converted property is to discourage wilful conversion of another's property. If a wilful converter were liable only for the market value of the converted property at the time it was taken, there would be no effective deterrent.[4] We decline to depart from that rule as to defendant Mahnomen. The judgment against this defendant is therefore affirmed.

But the rule that an innocent purchaser from a wilful converter is liable for enhanced value is not necessary to discourage wilful converters, since sufficient deterrence is already provided by the rule that the wilful converter is liable for enhanced value.[5] Holding the innocent purchaser liable for enhanced value causes the innocent purchaser to suffer from the bad faith of his vendor.[6]

We now hold, therefore, that a good-faith purchaser from a

---

[3] Restatement, Torts, § 927, comments *d, e,* and *f.*

[4] McCormick, Damages, § 126.

[5] Note, 61 Harv. L. Rev. 113, 158.

[6] 16 Minn. L. Rev. 862, 863. This is especially true if the vendor is insolvent; in such case, the purchaser may not recoup his loss from the vendor.

wilful or bad-faith converter is not liable for the value of the property at the time of the purchase but only for the value of the property at the time it was taken from the original owner. Judgment against Clay County, the innocent purchaser from Mahnomen, must accordingly be reduced to $11,564, the non-enhanced value as found by the jury. We accordingly reverse the judgment against this defendant and remand with directions to enter judgment in that reduced amount.

■ The final issue concerns the liability of the surety, Western Surety Company, on the general contractor's bond given by Mahnomen to Clay County pursuant to Minn. St. 574.26.

Section 574.31 provides in part:

"No action shall be maintained on any such bond unless within 90 days after the completion of the contract and acceptance thereof by the proper public authorities, the claimant shall file a written notice specifying the nature and amount of his claim * * * in the office of the auditor of the county * * *."

Plaintiff concedes that it did not file the notice required by Minn. St. 574.31. Clay County has not raised the defense of lack of notice, and Western Surety did not raise the defense until it moved for a new trial following the second trial. Plaintiff contends that defendants Clay County and Western Surety waived the defense of noncompliance with § 574.31. Western Surety contends that noncompliance cannot be waived.

In support of its contention, plaintiff relies on Standard Oil Co. v. Enebak, 176 Minn. 113, 222 N. W. 573, in which we held that the surety's failure to complain of a defect in the form of notice resulted in a waiver of the defense of defective notice. As we stated in Ceco Steel Products Corp. v. Tapager, 208 Minn. 367, 371, 294 N. W. 210, 213, the Standard Oil case is not in point on the issue of whether there can be waiver of the defense of noncompliance with § 574.31 as it now reads:

"* * * [U]nder the statute as it then read (prior to the 1929 amendment, L. 1929, c. 369, § 2) claimants were not required to

file notice with the county auditor but were required to serve such upon the contractor and the sureties. The [Standard Oil case] related to the surety's waiver of defects in the form of notice served. If in the [Standard Oil case] the law had remained as it was and plaintiffs had filed their notice with the county auditor but without giving the statutory notice to the contractor and his surety, would anyone contend that under [Standard Oil] recovery might be had? We think not. Plaintiffs' causes of action were given them by virtue of the statute; hence the manner and means of enforcement must likewise be in accordance therewith. 'Whatever right of action was in the claimant or liability on the part of the surety was conditioned upon the use of the statutory remedy. Divorced from that remedy the right and the liability are nonexistent.' People v. Metropolitan Surety Co. 211 N. Y. 107, 117, 105 N. E. 99, 102.''

The general rule is that if a condition precedent prevents the accrual of a right, performance of the condition precedent may not be waived by defendant to an action.[7] Because we stated in Ceco Steel Products Corp. v. Tapager, *supra,* that the evidence did not sustain the trial court's finding that the surety waived the defense of failure to file notice, plaintiff contends that the case did not hold that there could under no circumstances be waiver of the notice requirement. However, we think that such a holding necessarily follows from our statement there that a materialman's *right* to bring an action on the bond is nonexistent in the absence of strict compliance with the statutory requirement of filing notice.[8] We accordingly hold that, because of its failure to file the notice required by § 574.31, plaintiff is barred

[7] 1 C. J. S., Actions, § 25(c).

[8] We need not determine whether a claim for tortious conversion of materials used in a construction project is covered by the statutory bond for the protection of materialmen and the municipality. Cf. DeVries v. City of Austin, 261 Minn. 52, 110 N. W. (2d) 529. The right of Clay County to indemnity from Mahnomen, we further observe, has not been put in issue.

from maintaining this action against Western Surety Company.

Affirmed in part; reversed and remanded in part, with directions.