Robert N. SCHMALZ, Executor of the
Estate of Jeanette Opsahl Vickery, and
Marjorie Ironside Barnes, Respondents,

v.

Vera MAXWELL, Appellant,

Betty Allen, Appellant.

Nos. C5–83–1806, C7–83–1855.

Court of Appeals of Minnesota.

Sept. 11, 1984.

John R. Hawkinson, Grand Rapids, for respondents.

Dennis L. O'Toole, Grand Rapids, for appellant Vera Maxwell.

Sheldon D. McRae, Sr., Bemidji, for appellant Betty Allen.

Heard, considered, and decided by WOZNIAK, P.J., and SEDGWICK, and LESLIE, Judge.

## OPINION

SEDGWICK, Judge.

This is an appeal from a $50,000 judgment entered in favor of plaintiffs in a replevin action. Post-trial motions for judgment notwithstanding the verdict or a new trial were denied. Defendants' contend the judge's findings are not consistent with the evidence at trial, and newly discovered evidence contradicts sworn testimony upon which the trial judge based his findings. We affirm.

## FACTS

Dr. Jeanette Opsahl Vickery was appellant Vera Maxwell's sister, and appellant Betty Allen is Maxwell's daughter. Appellant Marjorie Ironside Barnes was a close friend of Vickery since their college days in the 1940s. Robert Schmalz is the executor of Vickery's estate.

The relationship between appellants, Maxwell and Allen, and Vickery was not close. Maxwell and her children showed little interest in Vickery until about a year before she died when they learned she had terminal cancer. Six months before she died, Vickery executed a will leaving all of her personal property to Barnes. Maxwell was named one of the residuary beneficiaries. As early as 1961 Barnes and her husband were named as beneficiaries in Vickery's will, to the exclusion of appellants Maxwell and Allen.

A couple of months before Vickery died, Barnes made several trips from her California home to Connecticut to visit Vickery where she was hospitalized. Appellants Maxwell & Allen, Minnesota residents, also made several trips to Connecticut during this time.

Vickery telephoned Schmalz from her hospital bed and requested he bring her will to her. He did.

Maxwell produced a "Bill of Sale" on Vickery's letterhead above Vickery's signature purporting to sell all her personal property to Maxwell for $1.00. This was dated eight months before Vickery died and two months before she executed a final will leaving her personal property to Barnes. The trial court found this document to be a fraud, passing no title in Vickery's property to Maxwell.

Maxwell produced a photocopy of her sister's will with Barnes' name crossed out and her own name written in its place. The alteration was not witnessed. The trial court found that because it was a forgery, Maxwell obtained no title to Vickery's personal property through the will.

Shortly before Vickery died, Maxwell contacted Schmalz and asked that a conservator be appointed for Vickery because she claimed Vickery was no longer competent. Schmalz refused.

The day after Vickery died, Schmalz received a phone call from someone at Vickery's Boston bank. This person said that Maxwell had presented a power of attorney purportedly signed by Vickery and notarized by Betty Allen, Maxwell's daughter. Schmalz advised the bank not to honor the power of attorney because it was not notarized by a Massachusetts notary. Schmalz did not know that Vickery died the previous day or he would have advised that the power of attorney was of no legal effect. He learned of her death a week later.

A neighbor who testified as to the value of Vickery's property, testified that within a week after Vickery's death she watched Maxwell and her children, Betty Allan and Robert Maxwell, load everything of any value in Vickery's house into a trailer truck and take it away.

Vickery's Steinway piano was sold by Maxwell and her daughter to a dealer for less than its true value. Maxwell received a check for $1,350 and Betty Allen received an organ worth $1,450. Barnes testified the Steinway was worth $4,500.

In pretrial testimony defendants and Robert Maxwell were untruthful about the piano transaction. After the personal property was taken, Robert Maxwell called Schmalz and advised him that he had the original will and would deliver it to a Minnesota attorney. The evidence did not disclose how Robert obtained the original. He did not appear for trial.

From his absence the trial court concluded that Robert was an unwilling accomplice to the conversion of the Vickery property and his testimony likely would not have been favorable to defendants.

The testimony of both defendants was evasive and unresponsive. Their credibility was impeached by prior inconsistent statements and documents.

Schmalz tried unsuccessfully to get an inventory of the personal property appropriated by Maxwell and her children. Barnes and a disinterested witness testified that the reasonable market value of Vickery's personal property at the time of her death was about $50,000.

The court entered judgment for this amount. Defendants appeal.

## ISSUES

1. Was appellant Allen deprived of a fair trial as a result of a personality clash between the presiding judge and appellant Maxwell?

2. Was the setting of the damages based on speculation and conjecture?

3. Were the findings properly supported by a handwriting analysis performed by the presiding judge without notice to defendant Betty Allen and without the issue of forgery having been presented?

## ANALYSIS

■ 1. After repeatedly warning defendant Vera Maxwell to confine her answers to the questions, the trial judge threatened to direct a verdict against defendants if she didn't give responsive answers. Defendant Allen characterized these threats and stern warnings as a personality clash between the judge and Mrs. Maxwell which denied her a fair trial.

We do not agree. The trial judge was attempting to enforce the rules of evidence which is his duty as a judge. Only after several stern warnings from the judge, did Mrs. Maxwell finally answer the questions put to her. The record as a whole indicates the trial was fair.

2. Defendants next assert that the damages awarded were based on speculation and conjecture, and the result of passion and prejudice of the trial judge.

When a person has wrongfully obtained possession of another's property and sold it, the real owner may bring an action for the value of the property. Generally, the proper measure of damages will be the fair, reasonable market value of the goods at the time of the taking, plus interest. *Mineral Resources Inc. v. Mahnomen Constr. Co.*, 289 Minn. 412, 184 N.W.2d 780 (1971).

If defendant refuses to allow the goods in question to be examined, thus depriving plaintiff of the opportunity to determine their value, then it has long been held that defendant may be held liable for the value of the best quality of such goods. *Beckman v. Raines*, 210 Mo.App. 253, 243 S.W. 192, 193 (1922); *Bethel v. Linn*, 63 Mich. 464, 30 N.W. 84 (1886); *Bailey v. Shaw*, 24 N.H. 297 (1851).

In proving damages all that is required is that credible evidence is sufficient to enable the court to make a fair and reasonable estimate. When an item has no market value, its cost may be the only evidence of its value, and may therefore be considered its value. *Duka v. Hotel Assoc., Inc.*, 23 Conn.Sup. 500, 185 A.2d 86 (1962).

Defendants offered no evidence as to the amount, condition, or value of the personal property. Plaintiffs, on the other hand, presented testimony by a disinterested person who was familiar with the items that were taken and because of her own antique business, had knowledge of their value.

Here, Barnes and a disinterested witness, an antique dealer and neighbor of Vickery, testified that the specific items of personal property they could recall were worth up to $44,350. This estimate did not include a piano Barnes valued at $4,500, and did not include all of the personal property.

Based on the record there is ample evidence to support the court's award of $50,000 in damages.

3. Defendants claim the evidence does not support the trial court's finding that Vickery's signature was forged by Maxwell on a document which purported to represent the sale of all of Vickery's personal property to her for $1.

Minn.R.Civ.P. 52 provides that findings shall not be set aside unless clearly erroneous. The evidence, on review, must be viewed in a light most favorable to the trial court's findings. *Continental Casualty Co. v. Knowlton*, 305 Minn. 201, 232 N.W.2d 789 (1975). Reviewing the signatures of Vickery and Maxwell this finding does not appear to be clearly erroneous. A handwriting expert is not necessary to make this kind of finding. Minn.R. Evid. 901(b)(2).

Lastly, defendants claim they were surprised when Barnes testified that a substantial number of the items claimed to have been converted were the property of Vickery's husband prior to their marriage. Maxwell testified that she had a joint interest with her sister in these items because they were bequeathed to them from their parents.

At a post trial motion Maxwell produced Vickery's husband's will and asked for a new trial based on this newly discovered evidence. She alleges that this document discredits Barnes testimony regarding Vickery's inheritance from her husband.

Minn.R.Civ.P. 59.01(4) requires that the newly discovered evidence be in fact newly discovered and be evidence which, with reasonable diligence, could not have been found and produced at the trial. The will in this case was always in Maxwell's

possession. The materiality of the newly discovered evidence must not be merely cumulative, contradictory, or impeaching evidence. To grant a new trial on grounds of newly discovered evidence, the new evidence must be such that it would likely affect the outcome of the case.

■ Here, the supposedly newly discovered document was not newly discovered. Viewing the evidence in the light most favorable to the court's finding, the court did not err in denying defendants' post trial motions.

### DECISION

We affirm the trial court.

LESLIE, Judge, concurring in part, dissenting in part.

I respectfully disagree with the majority that there is ample evidence to support the court's award of $50,000 in damages. I would affirm but modify and reduce the award of damages to $22,500.

Plaintiffs produced three figures as to the valuation of the property alleged to have been converted. Plaintiff Schmalz's own evaluation for internal revenue purposes was substantially lower than the others. It is that amount of $22,500, which the Internal Revenue Service apparently accepted as the value of the property converted, that I would accept as closest to the true value.