**SAFETY SIGNS, LLC, Respondent,**

v.

**NILES–WIESE CONSTRUCTION CO., INC., Defendant,**

**Westfield Insurance Company, Appellant.**

**No. A12–0370.**

Court of Appeals of Minnesota.

Sept. 17, 2012.

---

Gregory R. Spalj, Kristine Kroenke, Hannah R. Stein, Fabyanske, Westra,

Hart & Thomson, P.A., Minneapolis, MN, for respondent.

David D. Hammargren, Jason C. Tarasek, Hammargren & Meyer, P.A., Bloomington, MN, for appellant.

Considered and decided by BJORKMAN, Presiding Judge; JOHNSON, Chief Judge; and RODENBERG, Judge.

## OPINION

BJORKMAN, Judge.

Appellant insurance company challenges the district court's denial of summary judgment to appellant and grant of summary judgment to respondent subcontractor on respondent's payment-bond claim. Because service of the notice of claim was defective, we reverse.

## FACTS

The City of Owatonna hired Niles–Wiese Construction Company as the general contractor for the construction of an airport runway and taxiway. Pursuant to Minn. Stat. § 574.26, subd. 2(2) (2010), Niles–Wiese obtained a payment bond from appellant Westfield Insurance Company. The payment bond—a contract between Westfield and the city—requires Westfield to pay subcontractors and materialmen for any work done pursuant to the general contract for which Niles–Wiese does not pay.

After Westfield issued the payment bond, Niles–Wiese entered into a subcontract with respondent Safety Signs, LLC to perform traffic-control and pavement-marking work on the airport project. In February 2009, Safety Signs sent a notice of payment-bond claim (notice) to Niles–Wiese and Westfield by certified mail. Safety Signs sent the notice to Niles–Wiese's primary business address rather than the address listed on the payment bond, as required by Minn.Stat. § 574.31, subd. 2(a). Despite this failure to comply with the statute, both Niles–Wiese and Westfield acknowledged receipt of the notice, and Niles–Wiese paid the requested amount.

On January 7, 2010, Safety Signs sent notice of another payment-bond claim to Niles–Wiese and Westfield by certified mail. As it did in February 2009, Safety Signs sent notice to Niles–Wiese's primary business address. This time, the notice was returned as undeliverable. Westfield received its notice on January 11, 2010, and acknowledged receipt thereof. Westfield refused to pay the claim even though it was undisputed that Safety Signs satisfactorily completed its work and Niles–Wiese failed to pay the full amount due to Safety Signs.

Safety Signs commenced this action seeking to recover the amount due under the subcontract plus interest. Westfield moved for summary judgment, asserting that the payment-bond claim fails because the notice was untimely and was not served on Niles–Wiese at the address listed on the payment bond. The district court denied this motion, reasoning that the notice was timely because it was mailed within the statutory notice period and failure to serve Niles–Wiese at the address listed on the payment bond was not fatal to Safety Signs' claim. Safety Signs subsequently moved for summary judgment, which the district court granted, ordering Westfield to pay the amount due under the subcontract along with penalty interest, attorney fees, costs, and disbursements. This appeal follows.

## ISSUES

I. Was Safety Signs' notice timely because it was mailed, though not re-

ceived, within the 120–day statutory period?

II. Was Safety Signs' service of notice fatally defective because the notice was sent to Niles–Wiese's primary business address rather than the address listed on the payment bond?

## ANALYSIS

On appeal from summary judgment, this court reviews de novo whether there are genuine issues of material fact and whether judgment is appropriate as a matter of law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn. 2002).

■ The Public Contractors' Performance and Payment Bond Act (the bond statute) requires contractors to obtain payment bonds for public-works contracts. Minn.Stat. § 574.26, subd. 2(2). The purpose of the bond statute "is to protect laborers and materialmen who perform labor or furnish material for the execution of a public work to which the mechanics' lien statute does not apply." *Nelson Roofing & Contracting, Inc. v. C.W. Moore Co.*, 310 Minn. 140, 144, 245 N.W.2d 866, 868 (1976) (quotation omitted). Recovery on a payment bond is conditioned upon the claimant providing timely notice of its claim to both the contractor and the surety. Minn. Stat. § 574.31, subd. 2(a).

## I. Safety Signs' service of notice was timely.

■ A payment-bond claim may not be maintained unless, "within 120 days after completion, delivery, or provision by the [claimant] of its last item of labor and materials, for the public work, the [claimant] serves written notice of claim under the payment bond personally or by certified mail upon the surety that issued the bond and the contractor." *Id.* The 120–day deadline is strictly enforced. *Edward Kraemer & Sons, Inc. v. Ashbach Constr. Co.*, 608 N.W.2d 559, 561, 563 (Minn.App. 2000) (holding that notice mailed 122 days after completion of work was untimely, without addressing whether service is effective upon mailing or upon receipt), *review denied* (Minn. June 13, 2000).

■ Westfield argues that Safety Signs' service of notice—which was mailed but not received within 120 days after the completion of Safety Signs' work—is untimely because service is effective upon receipt rather than upon mailing. We disagree. Although this presents an issue of first impression, we find instructive the supreme court's holding that service of a mechanic's lien notice is effective upon mailing. *Eischen Cabinet Co. v. Hildebrandt*, 683 N.W.2d 813, 818 (Minn.2004). The *Eischen* court reasoned that (1) the mechanic's lien statute is remedial and should therefore be liberally construed in favor of the claimant; (2) the requirement that a mechanic's lien notice be served personally or by certified mail makes little sense other than to ensure that the sender will have proof of the date of service; and (3) the rules of civil procedure and general legal authorities make service effective upon mailing in similar circumstances. *Id.* (citing Minn. R. Civ. P. 5.02; 66 C.J.S. Notice § 30(a) (1998)). Like the mechanic's lien statute, the bond statute is remedial and should be liberally construed. *Wheeler Lumber Bridge & Supply Co. v. Seaboard Sur. Co.*, 218 Minn. 443, 449, 16 N.W.2d 519, 522 (1944). And like the mechanic's lien statute, the bond statute requires personal service or service by certified mail. Minn.Stat. §§ 514.08, subd. 1(2), 574.31, subd. 2(a) (2010).

■ Westfield asserts that because Minn.Stat. § 574.31, subd. 2(d) (2010), ties the period during which a surety must

object to a claimant's request to extend the limitations period to the surety's receipt of notice, we should construe the statute to make service effective upon receipt. But "distinctions in language in the same context are presumed to be intentional, and we apply the language consistent with that intent." *In re Stadsvold,* 754 N.W.2d 323, 328–29 (Minn.2008). The fact that the legislature used the word "receipt" in subdivision 2(d) but omitted it in subdivision 2(a) indicates its intent *not* to make service under subdivision 2(a) effective upon receipt.

Westfield also points to cases holding that notice is effective upon receipt under the federal bond statute. But these cases turn on language in the federal bond statute requiring that written notice be "giv[en]" within 90 days after the completion of work. 40 U.S.C. § 3133(b)(2) (2006); *Pepper Burns Insulation, Inc. v. Artco Corp.,* 970 F.2d 1340, 1342–43 (4th Cir.1992); *U.S. ex rel. B & R, Inc. v. Donald Lane Constr.,* 19 F.Supp.2d 217, 223 (D.Del.1998). Because the Minnesota bond statute sets a deadline for "serving" notice, not "giving" notice, federal caselaw is unpersuasive.

■ We conclude that service of notice of a payment-bond claim, like service of a mechanic's lien notice, is effective upon mailing. Because Safety Signs mailed the notice within 120 days after it completed its work, the notice was timely.

## II. Safety Signs' service of notice was fatally defective.

■ To recover on a payment bond, the claimant must provide notice of the claim to the surety and the contractor at the addresses listed on the payment bond:

> [N]o action shall be maintained on the payment bond unless ... the [claimaint] serves written notice of claim under the payment bond personally or by certified

mail upon the surety that issued the bond and the contractor on whose behalf the bond was issued *at their addresses as stated in the bond* specifying the nature and amount of the claim and the date the claimant furnished its last item of labor and materials for the public work.

Minn.Stat. § 574.31, subd. 2(a) (emphasis added). The parties agree that Safety Signs did not comply with the statute because it mailed the notice to Niles–Wiese's primary business address rather than the address listed on the payment bond. But they dispute whether (1) Westfield may challenge this defect; (2) such a defect is fatal to a payment-bond claim; and (3) the defect can be waived. We address each issue in turn.

### A. A surety may challenge defective service on a contractor.

■■ Safety Signs argues that Westfield may not challenge the defective service on Niles–Wiese. We disagree. Generally, a party may challenge a failure to comply with statutory notice requirements if the notice statute is designed to protect that party. *See Harstad v. Mound Inv. Co.,* 415 N.W.2d 426, 428 (Minn.App.1987). Since a payment-bond claim is only recoverable against a surety, all of the statutory notice requirements are for the benefit of the surety. The requirement that notice be sent to the contractor benefits the surety by encouraging the contractor to pay the claim, eliminating the surety's obligation to pay it, and by enabling the contractor to inform the surety of inaccuracies in the claim, preventing the surety from paying an invalid claim.

■ Moreover, Niles–Wiese's failure to assert the service defect does not prevent Westfield from doing so. As discussed more fully below, compliance with the notice requirements is a "condition prece-

dent" to a payment-bond claim. *E.g., Mineral Res., Inc. v. Mahnomen Constr. Co.,* 289 Minn. 412, 421, 184 N.W.2d 780, 786 (1971). "The general rule is that if a condition precedent prevents the accrual of a right, performance of the condition precedent may not be waived by a defendant to an action." *Id.* As a result, sureties have repeatedly prevailed on the argument that a payment-bond claim failed for lack of notice upon another required party. *Id.* at 421–22, 184 N.W.2d at 786; *Ceco Steel Prods. Corp. v. Tapager,* 208 Minn. 367, 372, 294 N.W. 210, 213 (1940); *Spetz & Berg, Inc. v. Luckie Constr. Co.,* 353 N.W.2d 233, 235 (Minn.App.1984), *review denied* (Minn. Nov. 9, 1984). Accordingly, we conclude that Westfield may challenge the service defect.

**B. Strict compliance with the statutory notice requirements is a condition precedent to a payment-bond claim.**

 Westfield argues that substantial compliance with the notice requirements is insufficient to sustain a payment-bond claim. We agree. Minnesota courts have repeatedly held that "strict compliance with Section 574.31 is a condition precedent to the bringing of an action against a surety on a contractor bond." *See Spetz & Berg,* 353 N.W.2d at 235; *accord Mineral Res.,* 289 Minn. at 421, 184 N.W.2d at 786 ("[A] materialman's *right* to bring an action on the bond is nonexistent in the absence of strict compliance with the statutory requirement of filing notice."); *Ceco Steel,* 208 Minn. at 372, 294 N.W. at 213 ("The [bond statute] required strict observance on [the claimant's] part of the filing of such notice with the proper officer."); *Spartan Mech., Inc. v. St. Paul Fire & Marine Ins. Co.,* 414 N.W.2d 476, 478 (Minn.App.1987) ("[S]trict compliance with this notice provision is a condition precedent to the maintenance of an action

against the surety."), *review denied* (Minn. Jan. 15, 1988). Indeed, this court has explicitly rejected the substantial-compliance argument in the context of the notice requirements in the bond statute. *Spetz & Berg,* 353 N.W.2d at 235 ("Although it appears that the substantial compliance doctrine should be extended to Section 574.31 and public project bonds, that is for the Minnesota Supreme Court to decide, and, accordingly, we reluctantly affirm.").

Safety Signs urges us to read these cases to require only that claimants *attempt* to serve notice on all interested parties, pointing out that the claimants in *Spetz & Berg, Mineral Res.,* and *Ceco Steel* made no attempt at all to serve notice to the county auditor, as the bond statute required at the time. We decline to read these cases so narrowly. First, none of these cases distinguishes between failure to comply with the precise statutory-notice requirements and failure to even attempt to provide notice. Second, the gist of these cases is that "strict compliance with *Section 574.31*" is required, not merely an attempt to provide some notice. *Spetz & Berg,* 353 N.W.2d at 235 (emphasis added).

Safety Signs also argues that we should embrace the reasoning of two cases in which the supreme court noted the remedial purpose of the bond statute and explained that the statute should be " 'liberally construed and only a substantial compliance exacted as a condition precedent to the maintenance of an action on the bond.' " *Wheeler,* 218 Minn. at 449, 16 N.W.2d at 522 (quoting *Ilg Electric Ventilating Co. v. Conner,* 172 Minn. 424, 426, 215 N.W. 675, 675 (1927)). We are not persuaded. *Wheeler* determined that the claimant had strictly complied with the notice deadline based on a liberal construction of when the claimant's work was "accepted" (which was, but no longer is, the

trigger for the notice period). *Id.* at 445, 450, 16 N.W.2d at 520, 522. And *Ilg* held that the claim was not void for failure to comply with a notice provision that the legislature had inadvertently retained from a prior, superseded statute. 172 Minn. at 426–27, 215 N.W. at 675–76. The "substantial compliance" language in *Wheeler* appears to be mere dicta, and the language in *Ilg* applies to unique circumstances not present here. Moreover, to the extent that *Ilg* and *Wheeler* could be read to support Safety Signs' substantial-compliance argument, we conclude that the cases have since been implicitly overruled. *See Mineral Res.,* 289 Minn. at 421–22, 184 N.W.2d at 786 (requiring strict compliance).

■■■ Moreover, we are not convinced that the remedial purpose of the statute answers the question. "[A]lthough the remedial intent of legislation may be considered, the clear language of a statute cannot be disregarded in the name of pursuing the spirit rather than the letter of the law." *Niewind v. Carlson,* 628 N.W.2d 649, 651 (Minn.App.2001) (alteration in original) (quotation omitted). If the legislature had merely intended to require that notice be sent to an address where it would likely be received by the contractor, it could have said so. *See id.* But it did not. Instead, it laid out clear notice requirements that Safety Signs did not meet. We are constrained to uphold the clear language set forth by the legislature.

**C. Failure to comply with the bond statute's notice requirements results in a defect that cannot be waived.**

■■■ Safety Signs argues that, although it did not strictly comply with the section 574.31, subdivision 2(a) notice requirements, Westfield and Niles–Wiese waived the defect by accepting service of the February 2009 notice, which was similarly defective. We disagree because strict compliance with the statutory notice requirements cannot be waived.

At one time, failure to comply strictly with the notice requirements of the bond statute was considered waivable. In *Standard Oil Co. v. Enebak,* the supreme court held that a defendant could waive a notice defect, explaining that it found no public policy reason to prohibit such waiver:

> The general rule is that: Except as limited by public policy, a person may waive any legal right, constitutional or statutory. We are not confronted with the question whether a written notice of this sort could be waived, or the time waived, but simply whether a defect in the one timely served could be waived. And we are of opinion that it can be and clearly was. . . . We are unable to discover any good reason why a defect in a notice required to be given as a condition precedent to suit under a contract may be waived and a similar defect in a notice required to be given as a condition precedent under a statutory remedy cannot be.

176 Minn. 113, 116–17, 222 N.W. 573, 574 (1928) (quotation omitted).

But since then, the supreme court has held that a claimant's failure to comply with the notice requirements of the bond statute is a defect that cannot be waived. *Mineral Res.,* 289 Minn. at 420–21, 184 N.W.2d at 785–86. In *Mineral Resources,* the claimant did not file notice of its claim on the county auditor as the bond statute then required. Because no party asserted the statutory defense until the surety's posttrial motion, the claimant argued waiver, citing *Standard Oil.* Without expressly rejecting *Standard Oil,* the *Mineral Resources* court reasoned that

[p]laintiffs' causes of action were given them by virtue of the statute; hence the manner and means of enforcement must likewise be in accordance therewith. Whatever right of action was in the claimant or liability on the part of the surety was conditioned upon the use of the statutory remedy. Divorced from that remedy the right and the liability are nonexistent.

The general rule is that *if a condition precedent prevents the accrual of a right, performance of the condition precedent may not be waived by defendant to an action.*

*Id.* at 421, 184 N.W.2d at 786 (emphasis added) (citation and quotation omitted). Since strict compliance with the entire notice provision in the bond statute is a condition precedent to a payment-bond claim, any defect in the notice or service thereof cannot be waived under *Mineral Resources.* We conclude that *Mineral Resources* effectively overruled *Standard Oil* and, therefore, Westfield could not waive the service defect here.

Because the service defect is fatal to Safety Signs' payment-bond claim, we reverse the district court's summary judgment in favor of Safety Signs. Because Westfield is entitled to summary judgment dismissing Safety Signs' claims in their entirety, we decline to address Westfield's other arguments.

## DECISION

Because strict compliance with the notice requirements of the bond statute is a condition precedent to a payment-bond claim and because failure to strictly comply with the statutory notice requirements results in a defect that cannot be waived, the district court erred in denying summary judgment to Westfield and granting summary judgment to Safety Signs.

**Reversed.**