## CITY OF MANGUM v. POWELL et al.

No. 31971. Jan. 8, 1946.

*165 P. 2d 136.*

Hollis Arnett, City Atty., of Mangum, for plaintiff in error.

W. T. Jeter and Homer Windle, both of Mangum, for defendants in error.

WELCH, J. The judgment was entered against the city upon jury verdict in plaintiffs' action for damages resulting from death by drowning of their ten-year-old son.

Defendant here asserts:

"The evidence in this case is insufficient to sustain any sort of judgment against the City of Mangum,"

—and:

"The lake or pond in which Dwain Powell drowned, being a reproduction of a natural lake and not being equipped with any diving boards, docks, rafts or other paraphernalia of any kind was not an attractive nuisance."

The facts are as follows: In June, 1940, defendant purchased some 28 acres of rough canyon land lying immediately adjacent to the defendant city. Said city had practically surrounded the land on three sides. Defendant had commenced the improvement of the lands for park purposes. To the date of the unfortunate occurrence, May 14, 1941. a number of roadways had been constructed thereon, and there had been constructed an artificial lake by the placing of a dam across a ravine or canyon. The proposed park had not been officially opened for public use, though the roads had considerable use. The grounds were police patrolled and it was strictly against police regulations for children to play upon the grounds or around and in the lake.

On the day plaintiffs' son was drowned in this lake, he was upon the grounds without the permission or knowledge of his parents, and against police rules. His body was found in the lake clad in bathing trunks and his street clothes were found on the shore near the water.

Shortly prior to his death the police had warned him and other youngsters from the lake and premises and some time after such warning the police had taken him and another youngster from the premises to the city hall and had released them from custody upon their promise to remain away from the premises.

Prior to the city's purchase of the land the same seems to have been a favored playgrounds for some of the young boys for more than 30 years.

At the time of drowning there were no fences or barriers around the lake, nor were any warning or danger signs posted. At the time, the city was building a stadium and making other improvements on the land in preparation of opening the premises to the public as a city park. The lake had been constructed and water impounded therein for beautification and irrigation purposes. No diving boards, piers, bathhouses or other recreational equipment had been placed at or upon said lake at the time of the occurrence mentioned. No essential difference exists between the small lake so constructed and a natural lake or pond.

We think the following authorities amply sustain defendant's contentions: City of Grandfield v. Hammons et al., 100 Okla. 75, 227 P. 140; City of Hominy v. Musick, 137 Okla. 246, 278 P. 1094; Turner v. Durant Cotton Oil Co., 96 Okla. 31, 219 P. 892; Polk v. Laurel Hill Cemetery Ass'n, 37 Cal. A. 624, 174 P. 414; Harper v. City of Topeka, 92 Kan. 11, 139 P. 1018, and City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462.

The Grandfield Case is to the effect that without an invitation, express or implied, no duty of active care arises and the rule applies to infants, pointing out certain well recognized exceptions and distinctions which were not present there nor here. The same general rules and theory of law are announced and applied in the Musick Case, pointing out that gross negligence amounting to wantonness would take a case without the rule.

The Turner Case points out that the owner of property ordinarily has the

right to make such use of his property as others throughout the country.

The Polk Case points to the distinction between a dangerous condition which can be rendered safe without destroying its purpose and usefulness, and one which cannot be so safeguarded. The rule of the turntable cases is therein discussed and distinguished in a case much like the present one. Therein the court said:

" . . . A pond of water, it may be conceded, is always attractive to youngsters; but the dangers connected with and inherent in a lake or pond of water, natural or artificial, are obvious to everybody—even to a child old enough to be permitted by its parents to go about and play unattended upon the streets or in the public parks. It would not conform to the dictates of common reason to say that a child of the age of eight years, or even much younger, does not know and fully realize that a fall into a pond of water or a deep reservoir would result in injury to him, if not in his death. But there is no necessity for abstract reasoning upon the proposition, for we think it thoroughly settled by the decisions that a pond of water, whether natural or artificial, is not to be included in the same class with turntables and other complicated machinery, the inherent dangers of which are not obvious to a child."

In that same opinion is found the following quotation from a former opinion of the same court:

" 'But the rule of the turntable cases is an exception to the general principle that the owner of land is under no legal duty to keep it in a safe condition for others than those whom he invites there, and that trespassers take the risk of injuries from ordinary visible causes; and it should not be carried beyond the class of cases to which it has been applied. And the cases to which the rule has been applied, so far as our attention has been called to them, are nearly all cases where the owner of the land had erected on it dangerous machinery, the consequences of meddling with which are not supposed to be fully comprehended by infant minds. It has also been applied to a few other cases where the owner, by some affirmative act, has caused some artificial danger to exist on his premises, as in the case of Branson v. Labrot, 81 Ky. 638, 50 Am. Rep. 198, cited by appellant, where the defendants had "stacked a large quantity of lumber in one large and irregular pile, so negligently and badly done that as the deceased, an infant, was playing near it, one of the timbers fell upon and killed him." It is not contended by appellant that the rule of the turntable cases has ever been applied to facts like those in the case at bar; his contention is that the reasoning and philosophy of the rule ought to extend it to a case like the one at bar. But the same reasoning does not apply to both sets of cases. A body of water—either standing, as in ponds and lakes, or running, as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is *an apparent open danger, the knowledge of which is common to all* (italics ours); and there is no just view consistent with recognized rights of property owners which would compel one owning land upon which such water, or part of it, stands and flows, to fill it up or surround it with an impenetrable wall. . . . No case has been cited where damages have been successfully recovered for the death of a child drowned in a pond or a private premises who had gone there without invitation, while it has been repeatedly held that in such a case no damages can be recovered. It was . . . so held in Klix v. Nieman, 68 Wis. 271, 32 N. W. 223, 60 Am. Rep. 854, in Overholt v. Vieths, 93 Mo. 422, 6 S. W. 74, 3 Am. St. Rep. 557, in Hargreaves v. Deacon, 25 Mich. 1, in Gillespie v. McGowan, 100 Pa. 144, 45 Am. Rep. 365, and in the recent case of Richards v. Connell, 45 Neb. 467, 63 N. W. 915.

" 'A turntable can be rendered absolutely safe, without destroying or materially impairing its usefulness, by simply locking it. A pond cannot be rendered inaccessible to boys by any ordinary means. Certainly no ordinary fence around the lot upon which a pond is situated would answer the purpose; and therefore, to make it safe, it must

either be filled or drained, or, in other words, destroyed. But ponds are always useful, and often necessary, and, where they do not exist naturally, must be created in order to store water for stock and for domestic purposes, irrigation, etc. Are we to hold that every owner of a pond or reservoir is liable in damages for any child that comes uninvited upon his premises and happens to fall in the water and drown? If so, then upon the same principle must the owner of a fruit tree be held liable for the death or injury of a child who, attracted by the fruit, climbs into the branches and falls out. But this, we imagine, is an absurdity, for which no one would contend, and it proves that the rule of the turntable cases does not rest upon a principle so broad, and of such rigid application, as counsel suppose. The owner of a thing dangerous and attractive to children is not always and universally liable for an injury to a child tempted by the attraction. His liability bears a relation to the character of the thing, whether natural and common, or artificial and uncommon, to the comparative ease or difficulty of preventing the danger without destroying or impairing the usefulness of the thing, and, in short, to the reasonableness and propriety of his own conduct, in view of all surrounding circumstances and conditions. . . . But, with respect to dangers specially *created by the act of the owner, novel in character, attractive and dangerous to children, easily guarded and rendered safe* (Italics ours), the rule is, as it ought to be, different; and such is the rule of the turntable cases, of the lumber pile cases, and others of a similar character. But the owner of a thing dangerous and attractive to children is not always culpable, and therefore is not always liable for an injury to a child drawn into danger by the attraction.' "

In the Harman Case, supra, this court quotes from an Indiana case as follows:

" 'The perils of deep water are instinctively known, and if it be insisted that this boy, nine years of age, did not possess such ordinary discretion as fairly to appreciate his danger, then it may be urged with propriety that he should not have been allowed to go in the vicinity of the canal attended only by a companion still more youthful. In determining a claim of legal responsibility for a misfortune, sad and deplorable as it may be, we must be guided by established principles, and not led by mere sentiment independent of the law. Cases closely resembling this have frequently engaged the attention of the courts, and the decisions are practically harmonious that upon the facts here shown there can be no recovery." (Citing numerous authorities.)

We think our rather comprehensive fact statement already made demonstrates that the present case is more clearly within a great many of the rules stated in the above cases than would ordinarily be found in another, and that therefore no further analysis is desirable here.

Plaintiffs cite several cases to the effect that municipalities do not act in a governmental capacity in maintaining a public park and that therefore they are amenable in damages for torts. Defendant makes no issue in that respect. Plaintiffs also rely upon Jenson v. Kansas City; Capp v. St. Louis, and other cases discussed in Davoren v. Kansas City, 308 Mo. 513, 273 S. W. 401, 40 A. L. R. 473, where liability has been imposed upon cities where children have been drowned in the public parks. Whatever else may be said with respect to those cases it is sufficient here to point out that these premises were not yet a public park and it is clear that this youngster was not an invitee. The entire evidence here contradicts any suggestion that the young lad or his parents were assured by the city of any degree of safety or protection from the danger of swimming in this pool.

The judgment is reversed.

GIBSON, C. J., HURST, V. C. J., and OSBORN, BAYLESS, CORN, and DAVISON, JJ., concur.