ATCHISON, T. & S. F. RY. CO. v. POWERS.

No. 34567. April 23, 1952.

*243 P. 2d 688.*

Rainey, Flynn, Green & Anderson, Oklahoma City, and McMahan, Loofbourrow & Loofbourrow, Boise City, for plaintiff in error.

Aaron Mesirow, Oklahoma City, and C. R. Board, Boise City, for defendant in error.

ARNOLD, C. J. Plaintiff is the widowed mother of Roy Powers, a thirteen year old boy, who was drowned in an artificial body of water excavated and maintained by defendant on its railroad right of way near its yards at Boise City, Oklahoma.

Plaintiff alleged the artificial body of water was a small lake, generally six or seven feet deep, and constituted an attractive nuisance and was especially dangerous to small children by reason of the depth of the water and because there were holes of varying depths in the pond. Failure to have signs of warning as to the dangerous character of the premises and failure to have fences or other protection around the pond so that children of tender years could not obtain access to the place was alleged. It was further alleged the deceased and a younger companion were attracted by the pond and went there to play. That the deceased,

after entering the water, stepped off into a hole excavated in the digging of the pond and, being unable to swim, was drowned. It was further alleged he was a stout, well-developed, healthy obedient boy and was an able and skilled farm hand, capable of doing a man's work and earning a man's wages on the farm.

For answer, defendant alleged that the deceased went upon its property and into the pond without right or authority and without invitation either expressed or implied and that the drowning resulted from the deceased's own negligence or from some cause unknown to the defendant for which it was not responsible.

The pond involved was an excavation made near the place where a six inch drain tile intersected and emptied into an open drainage channel. It was used by defendant in the operation of its business to permit drainage of surface waters, together with discharge of water from locomotive engines. Sometimes the pond was full of water while other times it was dry. The pond or excavation was described as being rectangular and about 60 or 70 feet long and 20 to 25 feet wide and up to ten feet deep with banks almost straight up and down, or like a pit. The pond was not adjacent to any residences or roads or highways. As evidenced by the testimony and the photographs there were no amusement facilities about the pond.

Upon the day before the tragedy the deceased, a younger brother and a companion, Montie Sappenfield, went bird hunting with a B-B gun and the deceased wanted to go down to the pond of water. All three of the boys took off their clothes and went into the water, which was about waist deep, and waded around some 30 minutes to an hour.

That night there was a big rain. The next afternoon the deceased and Montie Sappenfield decided to go back to the pond. Apparently, because of the rain during the night, there was more water in the pond. It appeared to be up near the top of the hole or pond.

The witness, Montie Sappenfield, testified that on the second day he would not go into the pond because "it looked deep and I could not swim", and he decided the water was too high to wade in. He testified that "He (the deceased) went in. I told him it was too deep, and he better not."

The plaintiff proved that the deceased was a boy of better than average intelligence and capable of doing everything except heavy lifting that was necessary to draw a man's wages as a farm hand. Farmers for whom he had worked testified deceased capably operated a farm tractor and was a good and dependable farm hand.

The court submitted to the jury instructions on attractive nuisance.

(1) The defendant contends that a pond or lake, whether natural or artificial, is not an attractive nuisance and that the evidence was not sufficient to permit submission of the case to the jury and that the demurrer to plaintiff's evidence and the motion for directed verdict should have been sustained.

There is no contention that the deceased was an invitee upon defendant's premises. There is no evidence to sustain any such theory. Hence deceased's right to be in the pond or excavation depends upon the existence of an attractive nuisance.

This court has previously considered similar cases involving liability for loss of life resulting from drowning. In City of Mangum v. Powell, 196 Okla. 306, 165 P. 2d 136, it was held there was no liability for damages resulting from drowning of a ten year old boy in an artificial lake or pond which was essentially like a natural lake. The court declined to apply the rule of the Turntable cases or attractive nuisance for the cogent reasons set forth by Justice Welch.

In Dennis et al. v. Spillers et al., 199 Okla. 311, 185 P. 2d 465, it was alleged a seven year old child was drowned in an ornamental pond built

by defendants, partly on the premises occupied by them as a home and partly on an unused street. The pond was 75 feet in diameter and approximately ten feet deep with steep sides. That there was shrubbery around part of the pond and also rock steps down into the pool over which water ran. That it was attractive to children and was in a thickly populated residential section of the city, was not fenced in, and was in close proximity to another pond or lake in a municipally owned park, which latter pond was enclosed with a strong fence; and there near a place where children often played. The trial court sustained defendant's demurrer to the petition and plaintiffs appealed.

In the Dennis case, supra, it was held:

"Defendants are liable for damages caused by their maintenance of the pond if they were guilty of negligence or if they created an attractive nuisance. As to the question of actual negligence, in a case where the injured party was not an invitee of the owner of the premises, we settled the law in the case of City of Grandfield v. Hammonds et al., 100 Okla. 75, 227 P. 140, as follows: 'Without an invitation, express or implied, no duty of active care arises. Neither silence, acquiescence, nor permission, however, standing alone, is sufficient to establish an invitation. A license may thus be created but not an invitation. The infancy of the party injured does not change the situation.'

"The deceased herein was not an invitee of the defendants, nor was he on the premises with their knowledge. Therefore, there could be no liability upon the general negligence theory.

"The law is equally as well settled by this court as to a pond constituting an attractive nuisance. The matter is thoroughly discussed and many citations collected in the case of City of Mangum v. Powell et al., 196 Okla. 306, 165 P. 2d 136. Therein we quoted from Peters v. Bowman, 115 Cal. 345, 47 P. 113, 598, 56 Am. St. Rep. 106; '* * * A body of water, either standing, as in ponds and lakes, or running, as in rivers and creeks, or ebbing and flowing, as on the shores of seas and bays is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it *is an apparent open danger, the knowledge of which is common to all* (Italics ours); and there is no just view consistent with recognized rights of property owners which would compel one owning land upon which such water, or part of it, stands and flows, to fill it up, or surround it with an impenetrable wall. * * *' "

(2) City of Mangum v. Powell and Dennis v. Spillers, supra, holding a pond of water, whether natural or artificial, is not an "attractive nuisance" in absence of any hidden inherent dangers, as to statement and application of the law, are consistent with the great weight of authority as illustrated by the annotation in 36 A. L. R. 224-234. Counsel for plaintiff, in effect, concedes this but contends that the present case is different because there was oil and oily debris in the pond, consequently, it was not the same as a natural pond. Plaintiff established that the deceased was above average intelligence, capabilities and understanding for a boy of his age. There was evidence the deceased, during the summer vacation months, worked at wheat farming, driving a tractor and helping with planting and harvesting, drawing the same wages as a regularly paid man so engaged.

In City of Mangum v. Powell, supra, it was said:

" 'A pond of water, it may be conceded, is always attractive to youngsters; but the dangers connected with and inherent in a lake or pond of water, natural or artificial, are obvious to everybody - even to a child old enough to be permitted by its parents to go about and play unattended upon the streets or in the public parks. It would not conform to the dictates of common reason to say that a child of the age of eight years, or even much younger, does not know and fully realize that a fall into a pond of water or a deep reservoir would result in injury to him, if not in his death. But there is no

necessity for abstract reasoning upon the proposition, for we think it thorougly settled by the decisions that a pond of water, whether natural or artificial, is not to be included in the same class with turntables and other complicated machinery, the inherent dangers of which are not obvious to a child.' "

"* * *

" 'The perils of deep water are instinctively known, and if it be insisted that this boy, nine years of age, did not possess such ordinary discretion as fairly to appreciate his danger, then it may be urged with propriety that he should not have been allowed to go in the vicinity of the canal attended only by a companion still more youthful. In determining a claim of legal responsibility for a misfortune, sad and deplorable as it may be, we must be guided by established principles, and not led by mere sentiment independent of the law. Cases closely resembling this have frequently engaged the attention of the courts, and the decisions are practically harmonious that upon the facts here shown there can be no recovery.' "

Dennis v. Spillers and City of Mangum v. Powell, supra, are considered controlling and decisive of the issues in this case.

The judgment is reversed.

HALLEY, V. C. J., and CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.