**Randolph A. OGDEN et al.**

**v.**

**UNITED STATES of America.**

**Civ. No. 4332.**

United States District Court
N. D. Texas,
Fort Worth Division.

Jan. 4, 1963.

 

Morgan & Shropshire, Fort Worth, Tex., for plaintiffs.

T. Gary Cole, Jr., Asst. U. S. Atty., Fort Worth, Tex., for defendant.

BREWSTER, District Judge.

Plaintiffs, Randolph A. Ogden and wife, Mary Ogden, brought this action under the Federal Tort Claims Act seeking damages for the death of their four year old son, Johnny, as a result of his drowning in a pond of water located in an open field adjacent to Clinton-Sherman Air Force Base in Oklahoma. The Court has jurisdiction under Title 28, U.S.C.A. § 1346(b).

The following quotation from the concluding paragraph of one of plaintiffs' briefs filed in this case after all the evidence had been received gives a concise statement of the theory upon which plaintiffs sought to recover:

> "Plaintiffs submit that the United States had such interest in the land in question, and knowledge about the hazard of the excavation, as to impose upon it the duty of care; that such excavation constituted an attractive nuisance; and that the United States was negligent in its failure to warn against it, fence it, or fill it and is this liable in damages to Plaintiffs for the death of their son."

Johnny was playing with two other four year old boys, Tommy Tucci and Michael Schleising, in the middle of the day on February 8, 1960. All three boys were sons of United States Air Force personnel stationed at the Clinton-Sherman Air Force Base. They lived in a housing project provided on the Base by the Air Force. Johnny's mother had watched him off and on as he played outside while she was doing her housework, and had seen him only a short while before he went with Tommy and Michael a quarter to half a mile across an open field adjoining the housing area to play around an abadoned shack. She immediately began a search for him. When he was found a short time later, he had been

drowned in a water filled excavation near the shack. The excavation was formed in 1956 by the removal of sand and gravel under agreement with the then individual owners for use in constructing the runways at the Air Base. The hole would fill with water during adequate rains, and would dry up within a short time thereafter. The water filled portion of it was about the size of a car port.

The boys were throwing rocks into the muddy water when the tragedy occurred. The banks were slippery, and Michael had fallen into the pond shortly before Johnny did. He got out by grasping a floating board. Johnny slipped and fell in the water when he went into it to get a toy tractor he had dropped. He was unable to reach the bank even with the help of the other boys. They went to their homes and reported that Johnny was in the water and could not get out. When the mothers reached the pond, Johnny had already drowned in water level with or over his head, and his body was about six feet from the bank. Johnny's mother was not guilty of any negligence.

There was no fence between the open field and the housing area of the Air Base or around the water filled excavation; and there were no warning signs at the hole or anywhere else in the field.

A few days before the accident, the United States had begun condemnation proceedings to acquire the field in question from Randolph Parker and wife for the purpose of expanding the Air Base. It had filed a Declaration of Taking in the United States District Court for the Western District of Oklahoma at 4:29 P.M. on February 5, 1960. An order for possession of the land was entered by the Court on February 8th, but it was not served upon the Parkers until some time on February 9th. On February 8th, shortly after the accident, Air Force personnel acting under the direction of the commanding officer moved in equipment and drained and filled the hole.

Prior to the time of the drowning Mr. Parker had complained to Air Force officials on the Base about children coming on his land from the housing area. He was informed that steps would be taken to stop the trespassing. There is no evidence that Mr. Parker advised the officials of the existence of any conditions on the land dangerous to children.

There are several reasons why the defendant is not liable to the plaintiffs under the facts stated.

In the first place, the theory of recovery relied upon by the plaintiffs requires that the defendant be in possession of the land at the time of the injury occurring thereon; and the proof in this case fails to show that the United States came into possession of the premises in question before the fatal accident. It is true that title to the land had vested in the Government upon the filing of the Declaration of Taking. Title 40 U.S.C.A. § 258a. That possession did not necessarily vest at the same time as the title is shown by that portion of the statute just cited, which provides that, "upon the filing of a declaration of taking, the court shall have power to fix the time within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner." See Puerto Rico Ry., Light & Power Co. v. U. S., 1 Cir., 1942, 131 F.2d 491, footnote on p. 494.

The only provisions in the order entered on February 8th fixing the time and terms for the delivery of possession were:

"IT IS THIS 8th day of February, 1960 ADJUDGED that all defendants to this action and all persons in possession or control of the property described in the complaint filed herein shall surrender possession of said property, to the extent of the estate being condemned, to plaintiff immediately; provided that a copy of this order shall be served upon all persons in possession or control of the said property forthwith."

■ It could be argued with reason that the order contemplated that the Government should come into the posses-

sion of the property upon service of a copy thereof on the persons then in possession and control of the property, which service occurred on the day following the drowning. However, it is not necessary to discuss that question, as the plaintiffs failed to show that the order was entered prior to the accident. They therefore failed to discharge their burden of proving that the United States was in lawful possession of the premises when Johnny drowned.

■ In the second place, even if there had been proof that the Order for Delivery of Possession was entered prior to the time of the accident, and if it were the law that possession vested in the United States at the time of such entry of such order, the evidence failed to show that the Government had either actual or constructive knowledge of the alleged attractive nuisance in time to have remedied it before the accident. See Prosser on Torts, Sec. 79, p. 463, and Central Trust Co. v. Wabash, St. Louis & Pacific Ry. Co., 7 Cir., 57 F. 441. The fact that the Parkers had complained to the Air Force Base officials about the trespassing of children from the housing area was not notice to such officials of the existence of a condition on the Parker premises which the plaintiffs alleged in their complaint "constituted a hidden peril."

■■ In the third place, there can be no recovery on the theory of substantive tort law relied upon by the plaintiffs. Subd. (b) of Section 1346, Title 28 U.S. C.A., under the terms of which this suit is brought, restricts the tort liability of the United States to those cases "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The liability in this case must therefore be determined by the law of the State of Oklahoma. Johnny Ogden and his companions were not invitees on the land in question; and even if they had been, the United States was not guilty of any negligence. They were not even licensees; they were trespassers. The plaintiffs recognized that status when they invoked the attractive nuisance doctrine. It is well settled that the law of the State of Oklahoma does not regard a pond of water of the type here involved as an attractive nuisance. City of Grandfield v. Hammonds, 100 Okla., 75, 227 P. 140; City of Mangum v. Powell, 196 Okla., 306, 165 P.2d 136; Dennis v. Spillers, 199 Okla., 311, 185 P.2d 465; Atchison, Topeka & Santa Fe Ry. Co. v. Powers, 206 Okla., 322, 243 F.2d 688.

■■ The plaintiffs' answer to the rule announced by the Supreme Court of Oklahoma in the authorities above cited is stated in the following paragraph of one of their briefs filed in this case:

"The Supreme Court of Texas observed that the trend of modern decisions in favor of the rule of liability quoted from Restatement of Torts and cited cases from several jurisdictions in some of which the court had overruled former opinions contrary to the Restatement rule. We believe that the rule of Oklahoma is harmonious with that of the Restatement of Torts. However, even if we should be mistaken in our analysis of the holdings of the Dennis and Powers cases, we think there is good reason to believe that if the case at bar were presented today to the Supreme Court in Oklahoma, that Court would adjudge a rule of liability in this case and thus bring itself in line with the majority of modern jurisdictions."

There are several fallacies in the plaintiffs' position. Two of them are: First, the federal district court in cases of this type must decide the case on the basis of what the applicable state law is, rather than on what it ought to be. Second, even if the Court believed that the Supreme Court of Oklahoma would now reverse its prior decisions, there is no way this case could ever reach such State Court.

The Court concludes that the defendant is not liable to the plaintiffs for any damages arising out of the transaction upon which this suit is based.

This opinion will serve as the findings of fact and conclusions of law, under the provisions of Rule 52, Federal Rules of Civil Procedure.

Judgment will be entered for the defendant in accordance with these findings and conclusions.