Linda MARTIN, as Trustee for the heirs
of Daniel Martin, deceased,
Respondent,

v.

SPIRIT MOUNTAIN RECREATION
AREA AUTHORITY, Appellant.

No. C7–96–477.

Supreme Court of Minnesota.

Aug. 7, 1997.

William P. Dinan, City Atty., M. Alison
Lutterman, Asst. City Atty., Duluth, for Appellant

Frederick J. Goetz, Minneapolis, for Respondent.

Carla J. Heyl, St. Paul, James S. Alexander, Asst. Atty., Gen., St. Paul, Sean M. Quinn, Duluth, amicus curiae.

## OPINION

STRINGER, Judge.

Linda Martin's husband was killed in a tragic ski accident at the Spirit Mountain ski area in 1991 when he fell and slid off a ski trail into some trees. As trustee for the heirs of Daniel Martin, Linda Martin ("respondent") brought suit against the Spirit Mountain Recreation Authority ("appellant") in St. Louis County District Court, alleging that appellant recklessly and negligently failed to maintain the ski trail Daniel Martin was skiing at the time of his death in a reasonably safe condition, or to provide adequate warning of the dangerous condition of the trail. Appellant moved for summary judgment arguing that, as a public authority, it was immune from liability under Minn. Stat. § 466.03, subd. 6e (1996) unless it engaged in conduct that would render a private party liable to a trespasser, and that there was no evidence that it had breached the duty of care owed to a trespasser. The district court denied appellant's motion holding that questions of fact existed as to whether the allegedly dangerous condition of the ski trail constituted an artificial condition appellant had reason to know was not likely to be discovered by skiers. The court of appeals affirmed. We hold that the allegedly dangerous condition of the ski hill was not an artificial condition. We therefore reverse.

At approximately noon on January 15, 1991, decedent Daniel Martin ("Daniel") was skiing at the Spirit Mountain Recreation Area, a ski area located near the city of Duluth and operated by appellant. Daniel fell while skiing on an advanced run known as "Gandy Dancer," apparently at a modest speed. The hill in that area slopes sharply toward trees lining the right side of the trail. Daniel slid a distance of approximately 50–75 feet at a sideways angle off the right side of the groomed ski trail and into a tree. He died as a result of the accident. No protective measures had been taken to keep skiers from sliding down the embankment and into the trees.

■ Respondent brought suit against appellant in St. Louis County District Court alleging that the sideward slope leading off Gandy Dancer and into the trees was a defective and dangerous condition, that appellant knew or had reason to know it was so, and that appellant carelessly, recklessly and negligently failed to maintain the area in a reasonably safe condition for skiers or to provide adequate warning of the dangerous condition. Appellant moved for summary judgment, arguing that, as a public authority, it was entitled to immunity under Minn.Stat. § 466.03, subd. 6e, which provides immunity from:

> Any claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services, or from any claim based on the clearing of land, removal of refuse, and creation of trails or paths without artificial surfaces, if the claim arises from a loss incurred by a user of park and recreation property or services. Nothing in this subdivision limits the liability of a municipality for conduct that would entitle a trespasser to damages against a private person.

Minn.Stat. § 466.03, subd. 6e. The district court held that the statute did not apply to appellant because Spirit Mountain was a proprietary, for-profit business and was therefore "not one of the facilities intended to be protected under the statute." On appellate review[1] the court of appeals reversed, holding that, because appellant is a municipality and the ski area is designed to provide recreational services, it comes within the plain language of section 466.03. *Martin v. Spirit Mountain Recreation Area Auth.*, 527

---

1. An order denying a motion for summary judgment on the ground of immunity from suit is considered a final judgment for purposes of ap-

pealability. *Anderson v. City of Hopkins*, 393 N.W.2d 363, 364 (Minn.1986).

N.W.2d 167, 169 (Minn.App.1995), *pet. for rev. denied* (Minn., March 29, 1995). The case was remanded to district court for a determination of whether appellant may be liable to the extent that a private person is liable to a trespasser. *Id.* at 169–70. This court denied respondent's petition for further review.

On remand, appellant again moved for summary judgment arguing that there was no evidence that it had breached its duty to a trespasser, first, because there was no evidence that the allegedly hazardous sideward slope of the hill was an artificial condition created or maintained by appellant, and second, because there was no evidence to establish that the hazard was hidden or "likely to be undiscovered." To counter appellant's assertion that the sideward sloping hill was not an artificial condition, respondent argued that the artificial condition of the hill was evidenced in answers to interrogatories by employees of appellant stating that the Gandy Dancer trail had been "designed and built" in 1974, that it was "groomed on a daily basis or as conditions warrant," and that "fill" may have been used to alter the terrain of the trail. Appellant's claim that the sideward sloping hill was openly visible and, therefore, likely to be discovered by the skier was rebutted by respondent offering the opinions of two experts, one stating that "[t]his side hill is not reasonably apparent to skiers approaching this area of the ski-run from above," and the other stating that "to a reasonable degree of certainty, from a human factor's perspective * * * an ordinary skier is not going to adequately perceive the danger as was encountered by Mr. Martin on January 15, 1991." The district court again denied appellant's motion for summary judgment holding that there were facts in dispute as to whether appellant met the standard of care owed to a trespasser. Specifically, the court concluded that the ski hill was an artificial condition and that there were factual disputes as to whether the hazards associated with the slope were of such a nature that a trespasser could reasonably be expected to discover them without a warning. On appeal, the court of appeals affirmed holding that respondent had raised genuine issues of material fact as to whether the alleged hazard was artificial and whether it was likely to be discovered by the decedent. *Martin v. Spirit Mountain Recreation Area Auth.,* 556 N.W.2d 603, 606 (Minn.App.1996).

■ Summary judgment is appropriate when the moving party demonstrates that the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *see also Thiele v. Stich,* 425 N.W.2d 580, 583 (Minn.1988) (placing the burden of demonstrating that no genuine issue of material fact exists for trial on the moving party). In determining whether summary judgment is appropriate, the court must view the evidence in the light most favorable to the party opposing the motion. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982). Because summary judgment involves a determination of whether a party is entitled to judgment "as a matter of law," Minn.R.Civ.P. 56.03, a denial of summary judgment is reviewed *de novo. See Frost–Benco Elec. Ass'n v. Minnesota Public Utilities Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984) ("[A]n appellate court need not give deference to a trial court's decision on a legal issue") (citations omitted).

■ As a public entity, appellant is liable only if it violated the standard of care that a private landowner owes to a trespasser. Minn.Stat. § 466.03, subd. 6e. For purposes of determining liability under section 466.03, Minnesota has adopted the standard of care owed to a trespasser found in the *Restatement (Second) of Torts* § 335 (1965). *Steinke v. City of Andover,* 525 N.W.2d 173, 176–77 (Minn.1994). Section 335 provides:

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

  (a) the condition

    (i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

*Restatement (Second) of Torts* § 335 (1965). Appellant is entitled to summary judgment, therefore, if it can demonstrate that the sideward sloping hill on the Gandy Dancer trail either did not constitute an artificial condition or was of such a nature that it was readily apparent to skiers, *i.e.,* appellant would have had no reason to believe skiers would not discover it.

We turn first to the question of whether the sideward slope of the hill constituted an "artificial condition on the land * * * which the possessor has created or maintains." *Restatement (Second) of Torts* § 335 (1965). Appellant asserts that, even if the sideward sloping hill leading into the trees was man-made, it did not constitute an artificial condition as a matter of law because it "duplicate[s] the natural mountain environment of the area." Respondent, on the other hand, argues that, because there is evidence indicating that the Gandy Dancer trail was "designed and built" by appellant, that it was groomed by appellant on a daily basis, and that "fill" may have been used to alter the terrain of the hill, the ski area and the allegedly dangerous sideward slope of the hill were "no more 'natural' conditions than are a golf course, a baseball field, or a dirt race track." According to respondent, "if something does not occur in nature, it does not duplicate nature" and therefore, because a ski area does not occur in nature, there is, at the very least, a factual question as to whether the allegedly dangerous sideward sloping was an artificial condition.

Our case law and case law from other jurisdictions does not support respondent's position. In *Johnson v. Washington County,* 518 N.W.2d 594 (Minn.1994), a seven-year-old boy drowned in an artificial pond created and operated by Washington County. In holding the county immune from suit under Minn Stat. § 466.03, we concluded that a "pond was not an artificial condition because the affected terrain duplicated nature. * * * [E]ven if the Reserve Pool were an artificial condition, the county is entitled to immunity because the pool contains no hidden dangers." *Id.* at 599–600 (citation omitted) [2] Courts in other jurisdictions have similarly denied a duty of care "[w]here artificial conditions more or less duplicate natural conditions * * *." 5 Fowler V. Harper et al., *The Law of Torts* § 27.3, at 139, n. 2 (2d ed.1986) (citing *Anderson v. Reith–Riley Constr. Co.,* 112 Ind.App. 170, 44 N.E.2d 184 (1942) (artificial cliff that merely duplicated a natural cliff); *Plotzki v. Standard Oil Co. of Ind.,* 228 Ind. 518, 92 N.E.2d 632 (1950) (artificial pond that merely duplicated natural pond); *Zagar v. Union Pac. R.R.,* 113 Kan. 240, 214 P. 107 (1923) (artificial bluff that merely duplicated natural bluff); *Arnold v. St. Louis,* 152 Mo. 173, 53 S.W. 900 (1899) (pond backed onto city street—child skating thereon drowned when ice broke); *Atchison T. & S.F. Ry. v. Powers,* 206 Okla. 322, 243 P.2d 688 (1952) (general holding on artificial and natural ponds)); *see also Cassel v. Price,* 396 So.2d 258 (Fla.Dist.Ct.App.1981) (affirming summary judgment for defendants where child had died upon falling from tree and hitting head on concrete blocks and bricks that had been placed under tree on basis that blocks and bricks did not constitute an artificial condition not ordinarily found under trees in natural state because hard packed earth, rocks, and projecting roots abound in

---

2. The court of appeals has held on at least two other occasions that man made changes to the natural environment do not create an "artificial condition" where the affected terrain duplicates nature. *See Lawler v. Soo Line R.R. Co.,* 424 N.W.2d 313 (Minn.App.1988) (holding that sudden release of water from beaver dam was not an artificial condition even if caused by hiking trail built downstream from dam), *pet. for rev. denied* (Minn., Aug. 24, 1988); *Henry v. State,* 406 N.W.2d 608 (Minn.App.1987) (holding that soil compaction during construction of campsite which led to decay of nearby tree which subsequently fell on plaintiff did not create an artificial condition because the affected terrain duplicated nature), *pet. for rev. denied* (Minn., Aug. 12, 1987).

nature), *rev. denied* 407 So.2d 1102 (Fla., Sept.14, 1981); *Ostroski v. Mount Prospect Shop–Rite, Inc.,* 94 N.J.Super. 374, 228 A.2d 545 (1967) (holding that snowcovered hill and slope extending from supermarket parking lot to street below, which had been modified during construction of the parking lot, was a natural rather than an artificial condition), *cert. denied,* 49 N.J. 369, 230 A.2d 400 (N.J., May 29, 1967).

Whether or not it is true that "a downhill ski area does not occur in nature," and therefore cannot be said to duplicate nature, the argument misses the point. The relevant focus is not on the ski area as a whole—it is on one particular feature of the Gandy Dancer trail—the sideward slope into the trees. Lifts and other equipment associated with a ski hill do not occur in nature, but the sideward slope here clearly does. The slope was a condition of nature, more natural than the artificial pond in *Johnson* and falling far short of artificial conditions such as dangerous electric wires cited in the Restatement as examples of conditions, more in the nature of traps, that provide a basis of liability to trespassers. *See Restatement (Second) of Torts* § 335 cmt. d, illus. (1965). The record demonstrates that the Spirit Mountain ski area was built on a variety of hilly and forested terrain with trails carved out of steep, heavily wooded areas. As tragic as was the accident that killed Daniel Martin, we conclude that the sideward sloping hill alleged to have caused his death did not constitute an artificial condition for the purpose of applying section 335 of the Restatement. Summary judgment must be granted in favor of appellant.

While it is unnecessary to address the issue of whether the sideward sloping condition was of such a nature that it would not reasonably have been discovered, another element of proof required for liability to trespassers under section 335 of the Restatement, we note that Daniel Martin was an experienced skier engaging in a sport that is inherently dangerous. He had a responsibility to "be particularly careful to discover dangerous conditions which are inherent in the use to which the possessor puts the land." *Restatement (Second) of Torts* § 335 cmt. f

(1965). The Gandy Dancer trail was marked as an "advanced" run, the trail map distributed by Spirit Mountain contained the standard warnings of the dangers of skiing, and Daniel had skied the same trail earlier in the same day. There would seem to be no material fact that could credibly stand in rebuttal to the obvious: there was nothing further Daniel would have learned about the risks of skiing Gandy Dancer by the posting of additional warning signs.

The judgment of the court of appeals is reversed and the matter is remanded to the trial court for entry of summary judgment in favor of appellant.

Reversed.