SAFETY SIGNS, LLC, Appellant,

v.

NILES–WIESE CONSTRUCTION CO., Inc., Defendant,

Westfield Insurance Co., Respondent.

No. A12–0370.

Supreme Court of Minnesota.

Dec. 4, 2013.

Gregory T. Spalj, Kristine Kroenke, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, MN, for appellant.

David D. Hammargren, Jason C. Tarasek, Hammargren & Meyer, P.A., Bloomington, MN, for respondent.

Matthew D. Resch, Wagner, Falconer & Judd, Ltd., Minneapolis, MN; and Eric B. Travers, Kegler, Brown, Hill & Ritter, LPA, Columbus, OH, for amicus curiae American Subcontractors Association, Inc.

## OPINION

WRIGHT, Justice.

The principal dispute in this case is whether a subcontractor gave proper notice of a payment-bond claim under Minn. Stat. § 574.31, subd. 2(a) (2012). Appellant Safety Signs, LLC, was a subcontractor on a public project. Safety Signs brought suit against general contractor Niles–Wiese Construction Company and respondent-surety Westfield Insurance Company, seeking to recover money owed under the subcontract. It is undisputed that Niles–Wiese defaulted. But Westfield moved for summary judgment on the payment-bond claim because Safety Signs mailed its pre-suit notice of claim to Niles–Wiese at the address listed on the subcontract rather than the address listed on the payment bond. The district court denied the motion and later entered judgment against Westfield. The court of appeals reversed, and we granted Safety Signs's petition for review. We conclude that Minn.Stat. § 574.31, subd. 2(a), requires a claimant to serve notice on the contractor at its address as stated in the bond as a prerequisite to filing suit. Because Safety Signs did not comply with the statutory notice requirements, we affirm.

In 2008, Niles–Wiese entered into a contract with the City of Owatonna to build a runway and taxiway at the City's airport (the Project) and entered into a subcontract with Safety Signs to provide traffic-control services and pavement-marking work for the Project. The subcontract listed Niles–Wiese's address as "112 South Main Street, P.O. Box 419, Medford, MN 55049." Westfield provided a payment bond for the Project, under which Westfield agreed to be liable in the event that Niles–Wiese failed to pay material suppliers or subcontractors. The payment bond listed Niles–Wiese's address as "215 NE First Street, Medford, MN 55049."

Safety Signs's work on the Project was divided into two phases. On November 7, 2008, Safety Signs completed its work on the first phase of the Project. The company submitted invoices to Niles–Wiese, but Niles–Wiese did not pay the full amount owed. Consequently, Safety Signs served notice of a bond claim on both Niles–Wiese and Westfield on February 13, 2009. The notice was sent by certified mail to Westfield's address as listed in the payment bond. But Safety Signs's notice to Niles–Wiese was sent to the address listed in the subcontract (112 South Main Street) rather than the address listed in the bond (215 NE First Street). Safety Signs received

signed, certified return receipts from both Niles–Wiese and Westfield. Niles–Wiese paid Safety Signs the full amount of its claim in April 2009. Neither Niles–Wiese nor Westfield objected on the ground that Safety Signs had served notice of the claim at Niles–Wiese's address as listed in the subcontract rather than the address listed in the bond.

In September 2009, Safety Signs completed its work on the second phase of the Project. The City paid Niles–Wiese and Westfield for the work, but Niles–Wiese once again failed to pay Safety Signs in full. As a result, Safety Signs sent notice of a bond claim by certified mail to both Westfield and Niles–Wiese on January 7, 2010. As with the first bond claim, Safety Signs sent notice to Westfield at the address listed on the bond but sent notice to Niles–Wiese at the address listed on the subcontract, rather than the bond.

The certified letter to Niles–Wiese was returned to Safety Signs marked "Return to Sender—Unclaimed—Unable to Forward." Westfield, however, responded to the notice and requested that Safety Signs submit proof of its claim. Westfield indicated that it would then "solicit [Niles–Wiese's] position regarding your claim" and advise Safety Signs of its intentions. The letter also contained a reservation of rights, stating that Westfield reserved any defenses it might have to the claim, including "failure to comply with notice or time for suit requirements." After Safety Signs submitted proof of its claim, Westfield sent a letter notifying Safety Signs that Niles–Wiese had disputed the claim and Westfield was therefore denying payment. Westfield copied Gary Wiese of Niles–Wiese on the letter using the address "PO Box 419, Medford, MN 55049–9467."

On September 8, 2010, Safety Signs served a complaint asserting its payment-bond claim against Westfield and alleging breach of contract, unjust enrichment, and other claims against Niles–Wiese. Niles–Wiese did not answer the complaint, and the district court entered a default judgment against Niles–Wiese. Westfield, however, answered the complaint and moved for summary judgment, arguing that Safety Signs did not send the notice to Niles–Wiese at the proper address. In response, Safety Signs submitted evidence that the address to which notice was sent was the address Niles–Wiese listed on its website and the address used on invoices and correspondence between Niles–Wiese and Safety Signs. The district court denied Westfield's motion and instead issued an order granting summary judgment to Safety Signs on the notice issue. Safety Signs subsequently moved for summary judgment on liability and damages, which the district court granted.

Westfield appealed and advanced several arguments, including that because Safety Signs failed to serve Niles–Wiese at the address listed on the bond, the district court should have granted summary judgment to Westfield. The court of appeals agreed with Westfield's argument and reversed, concluding that Safety Signs's notice was fatally defective because it was not sent to Niles–Wiese's address as listed in the bond. *Safety Signs, LLC v. Niles–Wiese Constr. Co.*, 820 N.W.2d 854, 858–61 (Minn.App.2012).

## I.

Safety Signs argues that the court of appeals erred because our case law requires only substantial compliance, rather than strict compliance, with the notice requirement. Westfield counters that the plain language of the statute leaves no room for interpretation and expressly requires service at the address listed in the bond as a condition precedent to filing suit. We review de novo a district court's denial

of summary judgment based on the application of the law to undisputed facts. *See Martin v. Spirit Mountain Recreation Area Auth.*, 566 N.W.2d 719, 721 (Minn. 1997). Statutory interpretation also is a legal issue subject to de novo review. *Harris v. Cnty. of Hennepin*, 679 N.W.2d 728, 731 (Minn.2004).

### A.

The Public Contractors' Performance and Payment Bond Act, codified at Minn. Stat. §§ 574.26–.32 (2012), generally requires contractors on public projects to supply payment bonds to ensure the payment "of all just claims" by persons furnishing labor and materials on the project. Minn.Stat. § 574.26, subd. 2. The insurer providing a payment bond is known as a surety and agrees to be liable to "cover any amounts that, because of the general contractor's default, are not paid to a subcontractor or materials supplier." *Black's Law Dictionary* 201 (9th ed.2009); *accord Cretex Cos. v. Constr. Leaders, Inc.*, 342 N.W.2d 135, 137 (Minn.1984).

If a subcontractor is not paid for its work on a public project, it may make a claim against the payment bond. But in order to bring a civil action asserting a payment-bond claim, Minn.Stat. § 574.31 requires the subcontractor to give notice to both the surety and the general contractor before a lawsuit is commenced. In particular, the statute provides,

> In the event of a claim on a payment bond by a person furnishing labor and materials, no action shall be maintained on the payment bond unless, within 120 days after completion, delivery, or provision by the person of its last item of

labor and materials, for the public work, the person serves written notice of claim under the payment bond personally or by certified mail upon the surety that issued the bond and the contractor on whose behalf the bond was issued at their addresses as stated in the bond specifying the nature and amount of the claim and the date the claimant furnished its last item of labor and materials for the public work.... For the purpose of this section, notice is sufficient if served personally or via certified mail to the addresses of the contractor and surety listed on the bond.

Minn.Stat. § 574.31, subd. 2(a).[1]

### B.

▌ The principal question before us is whether a claimant must strictly comply with the statutory directive to serve notice on the surety and general contractor "at their addresses *as stated in the bond*," *id.* (emphasis added), or whether substantial compliance with the statutory notice requirement is sufficient. In analyzing whether strict compliance with a statute is mandatory, we are guided by the language of the statute. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 57–58 (Minn.2013). In *Ruiz*, for example, we considered a statute that required that "'[t]o entitle any party to make [a] foreclosure [by advertisement], it is requisite'" that all assignments of a mortgage be recorded. *Id.* at 57 (quoting Minn.Stat. § 580.02(3) (2012)). We held that such language "unambiguously mandates strict compliance" with the recording require-

---

1. The general contractor is responsible for ensuring that the payment bond lists—for both the contractor and the surety—addresses "at which the companies are authorized to accept service of the notice of the claim." Minn.Stat. § 574.31, subd. 2(a); *see also* Minn.Stat. § 574.28. If the contractor fails to provide these addresses "then a claimant under the bond need not provide either the surety or the contractor written notice of its claim under paragraph (a)." Minn.Stat. § 574.31, subd. 2(b).

ment in order to properly conduct a fore-closure by advertisement. *Id.* at 58.

■ Here, Minn.Stat. § 574.31, subd. 2(a), provides that *"no action shall be maintained ... unless"* pre-suit notice is served on the surety and the contractor "at their addresses as stated in the bond." (Emphasis added.) This language is clear, and that clarity is indistinguishable from the statutory language at issue in *Ruiz.* By specifying that "no action shall be main-tained" unless certain conditions are met, the Legislature has unambiguously condi-tioned a claimant's right to bring an action on fulfillment of the statutory prerequi-sites, including service of notice at the addresses "stated in the bond." *Id.* When the Legislature specifies a consequence for a failure to meet a statutory requirement, we generally deem that requirement to be mandatory. *See Sullivan v. Credit River Twp.,* 299 Minn. 170, 176–77, 217 N.W.2d 502, 507 (1974).

In arguing that it need only substantial-ly comply with the notice requirement, Safety Signs relies on other language from section 574.31, subdivision 2(a), which states that "[f]or purposes of this section, *notice is sufficient* if served personally or via certified mail to the addresses of the contractor and surety listed on the bond." (Emphasis added.) The operative word is "sufficient," which usually means "[a]de-quate; of such quality, number, force, or value as is necessary for a given purpose." *Black's Law Dictionary* 1571 (9th ed.2009). Safety Signs argues that inherent in the concept of sufficiency "is the notion that other actions might be sufficient, depend-ing on the circumstances." Therefore,

Safety Signs contends, the only way to give separate meaning to this language is to construe it to mean that service at the bond address—while an *adequate* means of giving notice—"is not the exclusive proce-dure one must follow" to give notice of a bond claim.

We disagree. Contrary to the con-struction advanced by Safety Signs, we conclude that the "notice is sufficient" lan-guage simply means that a certified mail-ing directed to the bond address shall be deemed adequate to put the surety or contractor on *constructive* notice of the claim, regardless of whether it puts the recipient on *actual* notice. The "notice is sufficient" language precludes a surety or contractor from arguing that the certified mailing failed to put it on actual notice of the claim because, for example, the recipi-ent changed addresses; the letter never arrived, was lost, or was discarded; or the letter only reached an employee who was not responsible for responding to the claim. Therefore, like the statute at issue in *Ruiz,* section 574.31, subdivision 2(a), unambiguously mandates strict compliance with the address requirement as a prereq-uisite to filing suit on a payment bond.[2]

### C.

Our conclusion that the plain language of the statute mandates strict compliance with the address requirement finds addi-tional support in our case law. Although this is the first time we have construed Minn.Stat. § 574.31 in its current form, we have addressed whether strict compliance was required with respect to a similar

---

2. Our holding that Minn.Stat. § 574.31, subd. 2(a), mandates strict compliance with the ad-dress requirement does not divest district courts of subject matter jurisdiction when the party filing suit on a payment bond has failed to comply with the requirement. *See In re Civil Commitment of Giem,* 742 N.W.2d 422,

429–30 (Minn.2007) (reasoning that, because the state constitution gives the district courts a broad grant of original jurisdiction and stat-utes should be construed to avoid constitu-tional questions if possible, a mandatory stat-utory deadline for holding a hearing does not divest a court of subject matter jurisdiction).

requirement in a predecessor statute directing claimants to file notice of bond claims with the county auditor. *See Ceco Steel Prods. Corp. v. Tapager,* 208 Minn. 367, 294 N.W. 210 (1940) (discussing Mason's Minn.Stat. § 9705 (1927 & Supp. 1940)).

In *Ceco Steel Products Corp. v. Tapager,* the plaintiffs notified the surety of a contractor's debt for materials furnished on a public project, but they failed to file notice of the claim with the county auditor. 208 Minn. at 369, 294 N.W. at 211–12. The district court entered judgment in favor of the plaintiffs, and the surety appealed. *Id.* at 368, 294 N.W. at 211. On appeal, we observed that the statute provided that " '[n]o action shall be maintained' " unless the plaintiff gives notice to the county auditor, thus making proper notice "a condition precedent which must be performed before the right to bring action on the bond accrues." *Id.* at 371, 294 N.W. at 212 (quoting Mason's Minn.Stat. § 9705 (1927 & Supp.1940)). Concluding that the "language of the statute is clear and unambiguous" and left "no room for construction," we explained,

> Plaintiffs' causes of action were given them by virtue of the statute; hence the manner and means of enforcement must likewise be in accordance therewith. Whatever right of action was in the claimant or liability on the part of the surety was conditioned upon the use of the statutory remedy. Divorced from that remedy, the right and the liability are non-existent.

*Id.* at 371–72, 294 N.W. at 213 (citations omitted) (internal quotation marks omitted). Thus, we held that the statute "required *strict observance* on [the plaintiffs'] part of the filing of such notice with the proper officer." *Id.* at 372, 294 N.W. at 213 (emphasis added); *accord Mineral Res., Inc. v. Mahnomen Const. Co.,* 289 Minn. 412, 421, 184 N.W.2d 780, 786 (1971) (stating that the right "to bring an action on the bond is nonexistent in the absence of strict compliance with the statutory requirement of filing notice").

Safety Signs relies on several cases in which we held that a plaintiff need only substantially comply with certain aspects of the notice provision under earlier versions of the statute. *See Wheeler Lumber Bridge & Supply Co. v. Seaboard Sur. Co.,* 218 Minn. 443, 16 N.W.2d 519 (1944); *Standard Oil Co. v. Enebak,* 176 Minn. 113, 222 N.W. 573 (1928); *Ilg Elec. Ventilating Co. v. Conner,* 172 Minn. 424, 215 N.W. 675 (1927); *Benson v. Barrett,* 171 Minn. 305, 214 N.W. 47 (1927). Those cases, however, are distinguishable. Unlike this case, the cases on which Safety Signs relies involved questions of compliance relating to issues on which the statute was silent, *see Benson,* 171 Minn. at 307, 214 N.W. at 48 (involving statute that was silent on whether notice may be sent to surety's out-of-state office rather than in-state agent), or issues on which the statute stated only a general requirement that was open to interpretation, *see Wheeler Lumber Bridge & Supply,* 218 Minn. at 445, 16 N.W.2d at 520 (discussing when a contract is "accepted by the proper public authorities" (emphasis omitted) (internal quotation marks omitted)); *Standard Oil,* 176 Minn. at 115, 222 N.W. at 574 (addressing whether a notice adequately stated "the nature of the claim" (citation omitted) (internal quotation marks omitted)). The sole case in which we have allowed "substantial compliance" even though the plaintiff failed to satisfy an express statutory requirement is *Ilg Electric,* in which we excused the plaintiff's failure to include the date that the last item of work was furnished in the notice of claim. *See* 172 Minn. at 426, 215 N.W. at 675. We excused the failure in *Ilg Electric* because we determined that the Legislature had inad-

vertently retained the date requirement from the previous version of the statute. *Id.* at 427, 215 N.W. at 676. Here, however, the requirement that a claimant serve notice at the address listed in the bond is not an obsolete vestige of the previous statute, and *Ilg Electric* is clearly distinguishable for that reason.

This case, like *Mineral Resources* and *Ceco Steel,* involves a claimant's failure to comply with an explicit and specific statutory directive. *See Mineral Res.,* 289 Minn. at 420–21, 184 N.W.2d at 785–86 (regarding failure to file notice with the county auditor); *Ceco Steel,* 208 Minn. at 371, 294 N.W. at 212–13 (same). Although a substantial-compliance standard may be appropriate when statutory language is unclear, excusing a claimant's failure to comply with an unambiguous prerequisite to initiating an action—whether it is giving notice to the county auditor or serving notice at a particular address—would frustrate legislative intent.

### D.

We acknowledge that the address requirement in Minn.Stat. § 574.31, subd. 2(a), as written, creates a trap for the unwary. This trap is exacerbated by the fact that the statute provides a template for claimants to use when giving notice, but that template does not direct claimants, as the statute does, to use a particular address. Rather, the template merely instructs claimants to address their notice as follows:

NOTICE OF CLAIM ON PAYMENT BOND FOR PUBLIC WORK

TO: (Surety that issued payment bond) and (The contractor on whose behalf the bond was issued)

NOTICE IS HEREBY GIVEN that the undersigned claimant has a claim against the above-named surety for la-

bor and materials furnished by the undersigned for the public work. . . .

Minn.Stat. § 574.31, subd. 2(a). Claimants might unwittingly rely solely on forms modeled after the statutory template and remain unaware that, to comply with the statute, they must serve notice at the address listed in the bond. Indeed, such claimants may not be represented by counsel when they give notice of a bond claim, and they may lack the ability to research and identify the governing statute. The risk is particularly acute in cases, like this one, when the contractor or surety uses multiple addresses or represents to the public an address other than the address stated in the bond.

Although meritorious claims may sometimes be lost based on a statutory requirement of which the subcontractor is ignorant, this circumstance is not enough to overcome the statute's plain and unambiguous language. *See* Minn.Stat. § 645.16(6) (2012) (stating that we may consider "the consequences of a particular interpretation" only if the statutory language is ambiguous). Because the language of Minn. Stat. § 574.31, subd. 2(a), leaves no room for construction, *Ceco Steel,* 208 Minn. at 371, 294 N.W. at 213, we conclude that a plaintiff must strictly comply with the requirement to serve notice to the contractor at its address listed in the bond as a prerequisite to initiating a legal action.

### II.

Safety Signs contends that Westfield waived or modified the requirement to serve notice at the bond address by failing to raise the defect until after the lawsuit was filed and by acquiescing in the use of another address during Safety Signs's first claim on the bond. Westfield counters with two arguments: first, that our case law prohibits a surety from ever waiving the provisions of the notice re-

quirement and, second, that it did not affirmatively waive its rights here.

We need not resolve the unsettled question of whether the requirements of Minn. Stat. § 574.31, subd. 2(a), may ever be waived. *Compare Mineral Res.*, 289 Minn. at 421, 184 N.W.2d at 786 (concluding that a surety did not waive the requirement that notice be filed with the county auditor, and stating that "[t]he general rule is that if a condition precedent prevents the accrual of a right, performance of the condition precedent may not be waived by [the] defendant to an action"), *with Standard Oil*, 176 Minn. at 116, 222 N.W. at 574 (concluding that the surety waived its right to object to the notice's alleged failure to sufficiently describe the "nature of the claim," and stating that "[e]xcept as limited by public policy, a person may waive any legal right, constitutional or statutory" (citation omitted) (internal quotation marks omitted)). Assuming, without deciding, that the defect in notice can be waived, Safety Signs has failed to demonstrate waiver in this case.

 Waiver of a statutory right requires two elements: (1) knowledge of the right, and (2) the intent to waive the right. *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 182 (Minn.2011). Knowledge of the statutory right may be actual or constructive "'and the intent to waive may be inferred from conduct.'" *Id.* (quoting *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 367 (Minn.2009)). But waiver cannot be inferred from "mere inaction"; instead there must be "an expression of intent to relinquish the right at issue." *Id.* The burden of proving waiver rests on the party asserting it. *Id.*

Safety Signs has failed to meet its burden here. Safety Signs relies on Westfield's failure to object to its first notice of bond claim, which also was sent to the wrong address, and its failure to object to the second notice until after the lawsuit was filed. Although Westfield responded to both of Safety Signs's notices, its responsive letters contained a complete reservation of its rights to assert *any* defense to the claim, including "failure to comply with notice or time for suit requirements." Nothing in these letters demonstrates that Westfield intended to surrender objections to deficiencies in the notice. *See Ceco Steel*, 208 Minn. at 372, 294 N.W. at 213 (concluding that surety did not waive the notice provision because its letters showed no intent to surrender its rights and included a "complete reservation of rights" (emphasis omitted) (internal quotation marks omitted)). Unlike cases in which we have found waiver of some aspect of the notice requirement, Westfield did not tell Safety Signs that it would "work out some plan for payment" of the claim. *See Standard Oil*, 176 Minn. at 116, 222 N.W. at 574; *accord Johnson v. Laurence*, 171 Minn. 202, 203–04, 214 N.W. 24, 24–25 (1927) (finding that objection to deficient notice was waived when the plaintiff relied on representations from the surety's agents that they would "take care of" the matter and that he should not file suit).

Safety Signs's other evidence of waiver also is insufficient. Although Safety Signs relies on the fact that Westfield copied Niles–Wiese on its response to Safety Signs's bond claim using an address similar to the one listed in the subcontract (P.O. Box 419), that fact does not establish that Westfield intended to waive any objections it had under the statute. Likewise, Safety Signs observes that Niles–Wiese used the 112 South Main Street address on its website and on correspondence between Niles–Wiese and Safety Signs. But those facts are not germane to an analysis of whether Westfield demonstrated the intent to waive its objections. When we have found waiver, we have

based that finding on the actions of the party against whom waiver was sought or its agents. *Standard Oil,* 176 Minn. at 116–17, 222 N.W. at 574; *Johnson,* 171 Minn. at 203–04, 214 N.W. at 24–25. Safety Signs, therefore, has not met its burden of proof, and Westfield did not waive its objection based on compliance with the statutory notice requirements.[3]

### III.

■■■ Safety Signs also argues that Westfield has no standing to contest the adequacy of the notice to Niles–Wiese when it is undisputed that Westfield was properly served. We disagree. In *Ceco Steel,* we allowed a surety to object to the fact that another entity (in that case, the county auditor) did not receive the proper notice required by the statute, even though it was undisputed that the *surety* was notified of the claim. *See Ceco Steel,* 208 Minn. at 368–72, 294 N.W. at 211–13; *accord Mineral Res.,* 289 Minn. at 420–22, 184 N.W.2d at 785–86. As we explained in *Ceco Steel,* the right to sue on the payment bond is entirely statutory, and the language of the statute granting that right requires that the claimant take certain steps for the right to accrue. 208 Minn. at 371, 294 N.W. at 213. One of the required steps is to give proper notice to the contractor. The consequence for Safety Signs's failure to do so is that Safety Signs has no cause of action *at all,* regardless of the fact that Westfield, not Niles–Wiese, is the defendant. Westfield's objection is that the absence of proper notice to both the contractor and surety precludes any legal action on the claim. Westfield clearly has standing to make this argument.

Because the undisputed evidence establishes that Safety Signs failed to serve notice of its bond claim on Niles–Wiese at its address as stated in the bond and Westfield did not waive its objection to that deficiency, the court of appeals' decision reversing the judgment in favor of Safety Signs is legally sound.

Affirmed.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

3. Safety Signs's claim that Westfield "modified" the address in the bond through its conduct is at its essence a restatement of its waiver claim and fails for the same reasons.